IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 105,307

STATE OF KANSAS,
*Appellee*,

v.

WILLIE E. REED,
*Appellant*.

SYLLABUS BY THE COURT

1.

In stating the elements of aggravated indecent liberties with a child under the age of 14 in K.S.A. 21-3504(a)(3)(A), the legislature did not define the prohibited conduct by identifying body parts that could or could not be fondled or touched. Nor did the legislature specify that there must be skin-to-skin contact or that the offender must use his or her hands to fondle or touch the victim for there to be a violation of the law. Instead, a touch is prohibited if it meets the common meaning of the term "lewd," *i.e.*, if the touch is sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; or indecent, obscene, or salacious. In considering if a touch is lewd, a factfinder should consider whether the touch tends to undermine the morals of a child and is so clearly offensive as to outrage the moral senses of a reasonable person.

2.

Under the facts of this case, a rational factfinder could find the defendant's touching of two 8-year-old female victims—acts that included the defendant rubbing his genital area against the girls' buttocks in what was described as a "humping" motion and touching one girl on the buttocks—tended to undermine the girls' morals and to outrage the moral sense of a reasonable person, even though everyone was fully clothed.

1

3.

K.S.A. 21-3504(a)(3)(A) prohibits lewd touching with the intent to arouse the offender, the child, or both; actual arousal or satisfaction of the sexual desires of either participant is not necessary.

4.

Under the facts of this case, the defendant's act of rubbing two 8-year-old girls' buttocks with his genitalia, by its very nature, suggests a sexual intent.

5.

An issue not briefed by an appellant is deemed waived and abandoned.

6.

K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. The trial judge must be provided the specific objection, so the judge may consider as fully as possible whether the evidence should be admitted. Thus, appellate review is precluded if a party objects to evidence on one ground at trial but then asserts a different ground on appeal.

7.

Prior statements by a witness are generally material and probative, *i.e.*, relevant, because the consistency or lack thereof between the statement and the testimony either corroborates or undercuts the witness' credibility.

8.

Raising new grounds for an evidentiary objection in a motion for new trial is too late to satisfy the timely objection requirement of K.S.A. 60-404.

9.

Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. While there are exceptions to this general rule, a party waives and abandons those exceptions by failing to argue in the party's appellate brief for their application.

10.

Under the holding in *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), the State may not attempt to impeach a defendant's credibility by introducing evidence that the defendant did not avail himself or herself of the first opportunity to clear his or her name when confronted by police officers but instead invoked his or her constitutional right to remain silent as recognized in *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966).

11.

A prosecutor's reference to a defendant's prearrest silence is not a violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).

12.

The cumulative error doctrine does not apply if no error or only one error supports reversal.

13.

Appellate courts do not make factual findings but review those made by trial judges.

14.

A defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the trial judge are sufficient to support appellate argument by filing of a motion invoking the judge's duty under Supreme Court Rule 165 (2013 Kan. Ct. R. Annot. 265), if necessary.

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed August 8, 2014. Affirmed.

*Ronald L. Jurgeson*, of Ronald L. Jurgeson, LLC, of Lee's Summit, Missouri, argued the cause and was on the brief for appellant.

*Sheryl L. Lidtke*, chief deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  Willie E. Reed was convicted by a jury of two counts of aggravated indecent liberties with a child under the age of 14, in violation of K.S.A. 21-3504(a)(3)(A). The offenses, which occurred approximately 2 years apart, involved two 8-year-old-girls, C.T. and A.R. The sentencing judge imposed concurrent life sentences without the possibility of parole for 40 years. Now Reed appeals, raising five issues relating to alleged trial errors and one issue relating to sentencing:  (1) Was the evidence sufficient to support Reed's convictions; (2) did the trial judge err by admitting into evidence two handwritten notes, one from each victim describing her version of events; (3) did the trial judge err by admitting into evidence the victims' recorded statements; (4)

during Reed's testimony, did the trial judge err by allowing the prosecutor to ask questions which, according to Reed, pointed to his postarrest silence; (5) even if no single error warrants setting aside Reed's convictions, does the cumulative error doctrine entitle Reed to a new trial; and (6) does Jessica's Law, K.S.A. 21-4643, as applied to Reed, constitute cruel and/or unusual punishment under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution?

Reed failed to preserve several of these arguments by not making a timely and specific objection to evidence or not creating a sufficient record for appeal. Reed's remaining arguments lack merit, leading us to affirm Reed's convictions and sentences.

## FACTS AND PROCEDURAL BACKGROUND

The incident involving C.T. took place at her home between August 1, 2006, and September 30, 2006. C.T.'s stepfather regularly invited friends, including Reed, to watch Sunday football at the family's home. According to C.T.'s trial testimony, one day while Reed and others were at her house watching football, Reed entered her room. C.T. was on her bed, lying on her stomach, and reading a book. Reed leaned over her and "humped [her] back and forth." When asked which of Reed's body parts was touching her, C.T. said it was his "hip area and down," and C.T.'s mother testified that C.T. also referred to him touching her with his "private." C.T. further explained that Reed rubbed against "the middle of [her] back and down" to the "knee area." Reed then went into the bathroom, which could only be accessed through C.T.'s bedroom or the master bedroom. When he came out, he told C.T. "to get on the ground so he could see what [she] was reading" C.T. knelt next to her bed and leaned on the bed with the book in front of her. Then, Reed knelt down behind her and "humped [her] back and forth again" with his "private." C.T. said she got up to get a drink of water, and he left.

5

C.T. told her parents about Reed's conduct a couple of weeks later. C.T.'s parents decided they would not report the incident to law enforcement, but C.T.'s mother suggested C.T. write about the incident in her journal. C.T.'s mother explained to the jury that Reed was no longer welcome in their home, and if they and Reed happened to attend the same event, C.T.'s parents would either leave or keep their daughter close to them.

The incident involving A.R. occurred 2 years later on or about September 1, 2008, at a Labor Day barbecue at which Reed, A.R., and A.R.'s family were guests in a mutual friend's home. A.R. testified she wanted to play in the backyard with her 14-year-old brother and some other children, but her brother told her to go to the front yard. As they argued, Reed came up to A.R. and told her it was "okay" and she did not "have to worry about it." He told her to "come on" and started walking with A.R. around the house to the front yard. Reed draped his arm over her shoulder and placed his hand on her buttocks. According to A.R., when they got to the "vent" (air conditioning unit) at the side of the house, Reed stopped her and pulled her in front of him. He then pressed the "front of his pants" against her "butt." A.R. explained to the jury that by "front of his pants," she meant the area used for "peeing." A.R. told him to stop and ran away.

At some point, Reed approached A.R.'s brother and asked him something like, "[I]f somebody ever touch[ed] my sister, would I take up for her, or would I do something for her." A.R.'s brother found the question odd and simply told Reed, "[Y]eah, I would take up for her."

Later that night, A.R. told her mother about her encounter with Reed. At some point that night or the next day, A.R. also told her aunt. A.R.'s mother, like C.T.'s mother, told her daughter to write a note about what happened at the barbecue. A.R. did so on September 8, 2008, approximately 1 week after the incident.

6

C.T.'s mother heard about the incident involving A.R. from A.R.'s aunt. This led to C.T's and A.R.'s mothers visiting. The two mothers decided to file police reports and to turn over their daughters' handwritten descriptions of what had happened with Reed.

Reed was charged with two counts of aggravated indecent liberties with a child under the age of 14. At trial, Reed testified in his own defense and denied ever touching either girl. With regard to the 2006 allegation involving C.T., Reed acknowledged that because of the layout of the house, he passed through C.T.'s bedroom to access the bathroom. When asked if he had ever seen C.T. "over at the house," Reed said, "Yes." But he denied seeing C.T. on her bed reading a book on the day in question. With regard to the 2008 allegation involving A.R., Reed denied having any contact with A.R. or even seeing her at the barbecue. He testified that the "[f]irst time I laid eyes" on A.R. was at the trial.

A jury convicted Reed as charged. Because he was over 18 years old when he committed these crimes and because of prior convictions for sex offenses, the sentencing judge, pursuant to K.S.A. 21-4643(a)(1)(C) and (b)(1), imposed a life sentence with a mandatory minimum term of 40 years' imprisonment for each count and ordered the sentences to run concurrent. Reed brings a timely appeal, over which this court has jurisdiction under K.S.A. 22-3601(b)(1) (convicted of off-grid crime; case docketed before July 1, 2011).

EVIDENCE WAS SUFFICIENT

First, Reed argues that the evidence presented by the State was insufficient to support his convictions. "When examining the sufficiency of the evidence in a criminal case, the standard of [appellate] review is whether, after reviewing all the evidence in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v.*

*Ward*, 292 Kan. 541, 581, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). An appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. 292 Kan. at 581; see *State v. Spear*, 297 Kan. 780, 791, 304 P.3d 1246 (2013).

In order to apply this standard in this case, we must consider the evidence as it relates to the elements of aggravated indecent liberties with a child under 14 years of age. To prove the charges, the State had to show that (1) Reed lewdly fondled or touched C.T. and A.R.; (2) he engaged in this conduct with the intent to arouse or satisfy the "sexual desires of either the child or the offender, or both"; (3) C.T. and A.R. were under the age of 14 at the time of the acts; and (4) the conduct took place in Wyandotte County on or about the dates alleged in the criminal complaint. See K.S.A. 21-3504(a)(3)(A); PIK Crim. 3d 57.06 (aggravated indecent liberties with a child).

Reed challenges the sufficiency of the evidence regarding the first two elements, *i.e.*, the act of lewdly fondling or touching and the specific intent to arouse or satisfy his sexual desires, the sexual desires of the girls, or both.

*Lewd Fondling or Touching*

Consistent with Kansas law, the jury was given the following pattern instruction in which the term "lewd fondling or touching" was defined:

> "As used in these instructions, 'lewd fondling or touching' means fondling or touching in a manner which tends to undermine the morals of the victim, which is so clearly offensive as to outrage the moral senses of a reasonable person, and which is done with the specific intent to arouse or satisfy the sexual desires of either the victim or the offender or both. Lewd fondling or touching does not require contact with the sex organ of one or the other."

See PIK Crim. 3d 53.00 (definitions and explanations of terms).

Reed acknowledges that the PIK instruction correctly describes the prohibited conduct, but he argues his conduct does not meet the definition. He notes that he and each girl were fully clothed and there was no skin-to-skin contact between him and either girl. He also argues he did not use his hands to reach under their clothes and touch their "actual body parts or skin," nor did he ask the girls to touch him. Although the evidence showed that Reed touched A.R.'s buttocks, Reed attempts to minimize this act by noting that A.R.'s testimony showed he "only touched her fully-clothed bottom," and he suggests the buttocks are not a sex organ, which he describes as the "breasts or private area." He argues there was no evidence he touched either girl in these areas.

These arguments attempt to recast the elements of the offense by adding requirements not found in the statutory definition of aggravated indecent liberties with a child under the age of 14, as defined in K.S.A. 21-3504(a)(3)(A). The legislature did not restrict the prohibited conduct by identifying body parts that could or could not be fondled or touched. Nor did the legislature specify that there must be skin-to-skin contact or that the offender must use his or her hands to fondle or touch the victim for there to be a violation of the law. See *State v. Wells*, 223 Kan. 94, 98, 573 P.2d 580 (1977), *overruled on other grounds by State v. Ta*, 296 Kan. 230, Syl. ¶ 5, 290 P.3d 652 (2012). Instead, a touch is prohibited if it meets "the common meaning of the term 'lewd,' that is, whether a touch[] is 'sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; indecent, obscene, or salacious.'" *Ta*, 296 Kan. at 242-43 (quoting *Wells*, 223 Kan. at 98); see Black's Law Dictionary 1047 (10th ed. 2014) (defining "lewd" as "[o]bscene or indecent; tending to moral impurity or wantonness"). In considering if a touch is lewd, a factfinder—in this case, the jury—should consider whether the touch "tends to undermine the morals of a child [and] is so clearly offensive as to outrage the moral senses of a reasonable person." *Wells*, 223 Kan. at 98; see *State v. Colston*, 290 Kan. 952, 967, 235 P.3d 1234 (2010).

9

When the evidence in this case is viewed in the light most favorable to the State, the State presented evidence that Reed's touching of both C.T. and A.R. was lewd. C.T. testified that Reed "humped me back and forth." There was also evidence indicating that Reed approached C.T. while she was alone in her bedroom, positioned himself behind her and, through their clothing, rubbed his "private," *i.e.*, his penis, against her buttocks and lower back. According to C.T., Reed rubbed his "private" on her both before and after he went into the adjoining bathroom.

As for the incident involving A.R., the State presented evidence that Reed led her to the side of the house, away from the other guests attending the barbecue, and touched her buttocks as they walked side by side. Reed attacks the credibility of A.R., suggesting A.R.'s testimony should be "discarded" because she was inconsistent in her description of Reed's touching her buttocks and in other ways. This argument ignores the oft-stated rule that an appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *State v. Lowrance*, 298 Kan. 274, 296, 312 P.3d 328 (2013). Instead, we examine the evidence in the light most favorable to the State.

Accepting A.R.'s testimony without any reweighing, she established that Reed "was like, touching my bottom, like really touching my bottom." Then, Reed stopped A.R. at the air conditioning unit and pulled her in front of him. At that point, he rubbed the "front of his pants" on A.R.'s buttocks. She explained that the part of his body that touched her buttocks was the area used for "peeing." In her interview with a social worker at Sunflower House, Inc., a child abuse prevention center, A.R. said Reed was "humping" her by moving up and down. A.R. testified that she told him to "stop" and got away from him.

Even with everyone fully clothed, a rational factfinder could have found that these touches tended to undermine the morals of C.T. and A.R. and to outrage the moral sense of a reasonable person. As such, the touches can be characterized as indecent, obscene, salacious, unchaste, or licentious. See *Wells*, 223 Kan. at 98. Hence, the State presented sufficient evidence that Reed committed "lewd fondling or touching" of C.T. and A.R.

*Intent to Satisfy Sexual Desires*

Reed also contends the State failed to present sufficient evidence of a specific intent to satisfy his sexual desires, the sexual desires of the girls, or both. As he points out, there was no direct evidence of actual arousal or sexual intent. But this court has stated that "[a]ctual arousal or satisfaction of the sexual desires of either participant is not necessary for the existence of the crime." *State v. Brown*, 295 Kan. 181, 201, 284 P.3d 977 (2012). This construction arises from the plain language of K.S.A. 21-3504(a)(3)(A), which says nothing about actual arousal and instead prohibits "lewd fondling or touching . . . with the *intent* to arouse." (Emphasis added.) See *State v. Clark*, 298 Kan. 843, 849, 317 P.3d 776 (2014). And it is well established that the State can prove specific intent, which in this case includes sexual intent, with circumstantial evidence. *State v. Hurd*, 298 Kan. 555, 568, 316 P.3d 696 (2013); *State v. Becker*, 290 Kan. 842, 852, 235 P.3d 424 (2010), *superceded by statute on other grounds as stated in State v. Todd*, 299 Kan. 263, 273-74, 323 P.3d 829 (2014).

Reed attempts to deny the existence of sexual intent by arguing the points he made with regard to lewd touching. Namely, he notes that he did not touch the girls under their clothes, he did not touch their "breasts or private area," and he did not ask the girls to touch him. Again, his argument fails. The existence of these circumstances would have strengthened the State's case against Reed, but the absence of them does not mean the evidence of intent was insufficient. Similar arguments regarding a lack of direct evidence were made by the defendant in *Clark*—where the victims' grandfather draped his arm

11

around the girls and rubbed their breasts over their clothing—and were rejected. *Clark*, 298 Kan. at 849-50. There, we held that regardless of the fact the defendant and the victims were fully clothed, "the repeated rubbing of both girls' breast area, as opposed to an area of the body without sexual connotation, by its very nature suggests a sexual intent." *Clark*, 298 Kan. at 850.

Likewise, in this case, circumstantial evidence showed Reed's intent to arouse or satisfy sexual desires. He placed his hand on A.R.'s buttocks. And while there was no evidence of his placing his hand on C.T.'s buttocks, Reed's pattern of conduct with both girls was consistent and demonstrates his sexual intent. Reed approached both girls in an area of isolation, he positioned himself behind them, and then he rubbed his genitalia against their buttocks. Reed's act of rubbing the girls' buttocks with his genitalia in a "humping" motion by its very nature suggests a sexual intent. See *Clark*, 298 Kan. at 850. Moreover, although Reed did not make any sexually-charged comments to the girls, Reed's awareness of the inappropriate nature of his actions, at least with respect to A.R., can also be inferred in Reed asking if A.R.'s brother would "take up for her" "if somebody ever touch[ed]" his sister. See, *e.g.*, *State v. Huddleston*, 298 Kan. 941, Syl. ¶ 3, 318 P.3d 140 (2014) ("A jury may draw an inference of intent when a defendant's actions or words demonstrate that the defendant is conscious of his or her guilt.").

Viewed in the light most favorable to the State, a rational factfinder could conclude beyond a reasonable doubt that Reed's actions, coupled with the circumstantial evidence that surrounded the incidents, was sufficient to demonstrate his intent to arouse or satisfy his sexual desires, the sexual desires of the girls, or both. See *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011) ("conviction of even the gravest offense '"can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom."'"), *overruled on other grounds by State v. Astorga*, 299 Kan. 395, 402, 324 P.3d 1046 (2014).

12

Reed also argues the trial judge erred by admitting into evidence two handwritten notes, one from each victim, in which the girls described their versions of events. C.T.'s note stated:

"When daddy was in the other room his friend had came in my room and went to the restroom and when he came out he ask[ed] what I was reading[.] Then he leaned over me and started going up and down[.] Then he told me to get on the ground[.] [H]e got on me and did it again[.] Before that I told him I wanted some water and he waited for me and [*sic*] to come back[.] Then did it a second time."

A.R.'s note, which was not introduced into evidence until after she had testified, stated:

"To whom it may concern:
"He was touching the way I did not like. [H]e touched me on the butt and tryed [*sic*] to hump me[.] [H]e pull me over to him. We was on the side of the house. [B]ecuse [*sic*] he was talking to me[.] Because I was back there with my brother and my brother did not want me back there so he came [and] took [me] on the side of the house[.] [H]e playing like he talking to me and why [*sic*] we was walking he was touching on my butt and he told me to stop on the side of the house and start to hump me and I said stop."

When the State sought to introduce each of the notes, Reed objected based on relevancy and hearsay. In response, the State argued the applicability of the hearsay exception found at K.S.A. 60-460(a), which allows the admission of a "statement previously made by a person who is present at the hearing and available for cross-examination." The State further suggested the notes tended to show consistency in the girls' statements and should be admissible because the defense's theory was to "discredit these girls, that they are misremembering [*sic*] or they were blending memories." After

considering the parties' arguments, the trial judge overruled Reed's objections and found the evidence admissible.

In Reed's brief before this court, he states the issue on appeal was whether the trial judge erred in admitting the notes because the notes "were impermissible hearsay and unnecessarily cumulative evidence causing great prejudice to Defendant's right to a fair trial." Yet, in the body of his argument the only authorities he cites are K.S.A. 60-407(f) ("all relevant evidence is admissible") and *State v. Gardner*, 264 Kan. 95, 104, 955 P.2d 1199 (1998), for its statement that "'"[t]he determination of relevancy is a matter of logic and experience, not a matter of law. [Citations omitted.]"'" Thus, Reed mentions (1) hearsay, (2) cumulative nature, and (3) relevancy as the reasons the handwritten notes should not have been admitted into evidence. Reed is not entitled to relief on any of these three grounds.

Significantly, all Reed does is *mention* hearsay in stating the issue. He cites no hearsay-related authority and does not explain why the hearsay exception cited by the State—K.S.A. 60-460(a) (prior statement of person who is present and available for cross-examination)—does not apply. "An issue not briefed by an appellant is deemed waived and abandoned." *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 10, 303 P.3d 680 (2013). In addition, as the State argued, the handwritten notes were prior statements of the two girls, who were present and available for cross-examination. Although the State did not seek to admit A.R.'s statement until after Reed's attorney had cross-examined A.R., the trial judge allowed Reed's counsel to cross-examine her regarding the statement. Thus, the hearsay exception in K.S.A. 60-460(a) clearly applies.

As to Reed's cumulative evidence argument, the cumulative nature of a prior statement and trial testimony are inherent in the hearsay exception relied upon by the State—K.S.A. 60-460(a). Furthermore, Reed did not object during the trial to the cumulative nature of the evidence. Thus, he has failed to satisfy K.S.A. 60-404, which

provides that a verdict will not be set aside by reason of the erroneous admission of evidence unless "there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." This provision "dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial." *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). This court has emphasized the statutory requirement that the objection be *specific*, stating that "the trial court must be provided the specific objection so it may consider as fully as possible whether the evidence should be admitted." *State v. Richmond*, 289 Kan. 419, 429, 212 P.3d 165 (2009). The statutory language also precludes appellate review when a party objects to evidence based on one ground at trial but then asserts a different ground on appeal because to allow otherwise "undercut[s] the purpose of contemporaneous objections." 289 Kan. at 429; see *State v. Huffmier*, 297 Kan. 306, 319, 301 P.3d 669 (2013) (defendant may not object to admission of evidence on one ground at trial and then argue a different ground for objection on appeal); *McCaslin*, 291 Kan. at 707 (same).

Finally, Reed's relevancy argument lacks merit. In arguing the victims' handwritten notes were not relevant, Reed points out the notes were not used to refresh either witness' recollection. Instead, the exhibits "did nothing but improperly bolster" the witnesses' testimony. Reed then discusses reasons the victims' statements and testimony are not credible. Ironically, his credibility argument validates the material and probative nature of the victims' handwritten notes. As this court has previously recognized, prior statements by a witness are generally material and probative, *i.e.*, relevant, because the consistency or lack thereof between the statement and the testimony either corroborates or undercuts the witness' credibility. *E.g.*, *State v. Martinez*, 290 Kan. 992, 1001, 236 P.3d 481 (2010); see K.S.A. 60-401(b) (evidence is relevant if it has "any tendency in reason to prove any material fact"); *State v. Prine*, 297 Kan. 460, 477, 303 P.3d 662 (2013) (discussing definition of relevant evidence); *State v. Reid*, 286 Kan. 494, 504-05,

186 P.3d 713 (2008) (same). Relevancy does not depend on whether the victims' memories needed to be refreshed.

Our de novo assessment of the materiality of the evidence and our abuse-of-discretion review of the evidence's probative value leads to the conclusion that the evidence was relevant. See *State v. Shadden*, 290 Kan. 803, 817, 235 P.3d 436 (2010) (citing *Reid*, 286 Kan. at 507-09, for de novo standard for materiality and abuse of discretion standard for probative-value determinations). Hence, the trial judge did not err in admitting the handwritten notes of each victim.

VIDEO RECORDING ARGUMENTS WERE NOT PRESERVED

In Reed's next argument, he contends the trial judge erred by admitting into evidence the statements of C.T. and A.R. through video recordings of their interviews with social workers at Sunflower House and through the testimony of those social workers.

During the trial, Reed objected to the admission of this evidence based solely on hearsay. Specifically, defense counsel referred to K.S.A. 22-3433, governing the admission of recorded statements of victims under the age of 13, and argued the statements were hearsay because, at that time during the progression of the trial, C.T. and A.R. had "not yet testified themselves as to what happened." This was the extent of Reed's objection. Both girls later took the witness stand and testified for the prosecution. On appeal, Reed concedes the girls' statements to the social workers were not inadmissible hearsay. Reed also acknowledges that K.S.A. 22-3433 was repealed before his trial began.

Abandoning the trial objection, on appeal Reed argues that evidence of the girls' statements "amounts to nothing more than an impermissible comment on the credibility

16

of the child witnesses and improper cumulative testimony of what the children would say." As a result, he contends the introduction of this evidence unfairly prejudiced him and deprived him of a fair trial. Further, Reed takes issue with specific portions of the video recordings, even though each video recording was admitted in its entirety with no discussion about redactions.

These arguments fail to clear the preservation hurdle we have already discussed—the need to make a timely and specific objection at trial in order to preserve an evidentiary objection. See K.S.A. 60-404. None of these objections was stated at trial. Posttrial, Reed filed a motion for new trial in which he raised the "cumulative evidence" argument. But this court has stated that raising different grounds for an evidentiary objection in a motion for new trial is "posttrial" and is "too late." *McCaslin*, 291 Kan. at 708; see *State v. Brinkley*, 256 Kan. 808, 824, 888 P.2d 819 (1995) (declining to address an evidentiary challenge raised for the first time in a posttrial motion for new trial). The evidence was admitted without the trial judge having an opportunity to consider whether the evidence was inadmissible under the new grounds asserted by Reed.

Moreover, although Reed argues that he was denied his constitutional right to a fair trial, even "constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review." *State v. Coman*, 294 Kan. 84, 89, 273 P.3d 701 (2012). While there are exceptions to this general rule, Reed does not mention or brief them. And an issue not briefed by the appellant is deemed waived and abandoned. *State v. Holman*, 295 Kan. 116, 125, 284 P.3d 251 (2012).

In light of Reed's pursuit of new arguments on appeal—arguments he failed to preserve at trial—we do not address the merits of this issue. We note, however, that a portion of his argument overlaps with the relevancy arguments that we have already rejected with regard to the victims' handwritten notes. See *Martinez*, 290 Kan. at 1001.

17

Next, Reed argues the trial judge erred by allowing the prosecutor, over defense counsel's objection, to introduce evidence of what he contends was his postarrest silence, citing *Doyle v. Ohio*, 426 U.S. 610, 618-19, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). He contends the introduction of that evidence violated his constitutional right to remain silent. In response, the State argues there was no *Doyle* violation because, in the State's view, the prosecutor's questions focused on Reed's prearrest silence, not postarrest silence.

*Standard of Review*

The parties disagree on which standard of review should apply. In the State's appellate brief, it relies on a passing reference in Reed's brief to prosecutorial misconduct and cites the standard of review applicable to allegations of prosecutorial misconduct; it addresses the merits of Reed's arguments from that perspective alone. But Reed did not brief a prosecutorial misconduct issue. Therefore, that issue is not properly before this court. See *Boleyn*, 297 Kan. 610, Syl. ¶ 10 ("An issue not briefed by an appellant is deemed waived and abandoned.").

Reed on the other hand cites the multistep standard of review that applies when an appellate court reviews a trial judge's decision to admit or exclude evidence. See *State v. Bridges*, 297 Kan. 989, 995-96, 306 P.3d 244 (2013); *Shadden*, 290 Kan. at 817. Under this multistep analysis, the first question is relevance. *Shadden*, 290 Kan. at 817. Here, Reed does not argue relevancy in his appellate brief; thus, the argument is waived. See *Boleyn*, 297 Kan. 610, Syl. ¶ 10.

Second, it must be determined which rules of evidence or other legal principles apply. This conclusion is reviewed de novo. *Shadden*, 290 Kan. at 817; see *State v.*

18

*Sampson*, 297 Kan. 288, 301, 301 P.3d 276 (2013) (claim that trial judge's evidentiary ruling violated the defendant's rights is reviewed de novo); *State v. White*, 279 Kan. 326, 331-33, 109 P.3d 1199 (2005) (same). The third step involves the application of the appropriate evidentiary rule or principle. This court's review depends on the rule applied by the trial judge. *Shadden*, 290 Kan. at 817. If constitutional rights are not implicated, the propriety and scope of cross-examination lies within the trial judge's discretion and is reviewed on appeal for an abuse of discretion. See *State v. Sharp*, 289 Kan. 72, 97, 210 P.3d 590 (2009); see also *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (defining abuse of discretion).

Reed's arguments focus on the second and third steps. The resolution of the second and third steps of the admissibility analysis in this case is dependent on whether Reed's constitutional rights as protected by *Doyle* were implicated during the prosecutor's cross-examination of Reed, which involves a question of law that is reviewed de novo. *State v. Murray*, 285 Kan. 503, 520, 174 P.3d 407 (2008), *overruled on other grounds by State v. Marshall*, 294 Kan. 850, 859-60, 281 P.3d 1112 (2012).

*The Questions*

Reed bases his argument on questions asked by the prosecutor during the State's cross-examination of Reed. The prosecutor asked, "And you've had two years to think about how you would explain this to a jury, haven't you?" After defense counsel objected, there was a bench conference after which the prosecutor again asked, "Mr. Reed, you've had nearly two years to think about how you would explain this to a jury?" Reed replied, "Nearly two years to think about explaining it to a jury? It's been almost two years." Apparently the prosecutor took this statement as less of an answer to her question and more of a challenge to the calculation of the 2-year time frame because the prosecutor then tried to establish a starting point for the period. She asked, "And you knew about the allegations shortly after September, correct, of 2008?" Defense counsel objected and the

19

prosecutor reframed the question, asking, "Are you saying you never had a conversation with anyone in [A.R.'s] or [C.T.'s] family or friends about what the girls had said prior to January of 2009?" Reed answered, "Not at all."

*Legal Principles*

Reed suggests that the prosecutor's questions can be characterized as a *Doyle* violation. *Doyle* established that when a defendant invokes his or her right to remain silent after being given the *Miranda* warnings, the State may not "'attempt to impeach a defendant's credibility . . . by introducing evidence that the defendant did not avail himself or herself of the first opportunity to clear his or her name when confronted by police officers but instead invoked his or her constitutional right to remain silent. *State v. Brinkley*, 256 Kan. 808, 820, 888 P.2d 819 (1995).'" *State v. Drayton*, 285 Kan. 689, 707, 175 P.3d 861 (2008) (quoting *State v. Edwards*, 264 Kan. 177, 195, 955 P.2d 1276 [1998]); see *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966); *State v. Kemble*, 291 Kan. 109, 123, 238 P.3d 251 (2010).

This court has indicated that the "sequential, temporal relationship" between the reading of the *Miranda* warnings and the assertion of the right to remain silent is critical because "the *Doyle* Court held that 'the use for impeachment purposes of petitioners' silence, at the time of arrest and *after* receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment.'" *State v. Tully*, 293 Kan. 176, 186, 262 P.3d 314 (2011) (quoting *Doyle*, 426 U.S. at 619). The rationale for this limitation is that "*Doyle* and its progeny did not provide unlimited protection to the criminal defendant who testifies in his own behalf; rather, they stand for the principle that a defendant's silence *induced by government action* cannot be used to impeach his credibility. [Citations omitted.]" *State v. Massey*, 247 Kan. 79, 82, 795 P.2d 344 (1990). This inducement comes in the form of the *Miranda* warnings, which "imply that a person's

20

invocation of his or her right to silence will carry no penalty," and because the exercise of the right to silence has been induced by that implication; thus, "a later breach of that bargain at trial offends due process." *State v. Wilkerson*, 278 Kan. 147, 157, 91 P.3d 1181 (2004). As a result, a prosecutor's reference to a defendant's prearrest silence is not a *Doyle* violation. *Jenkins v. Anderson*, 447 U.S. 231, 238-40, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980).

In the present case, there are basically two references at issue. First, the prosecutor indicated during Reed's cross-examination that Reed had had nearly 2 years since the September 2008 incident "to think about how you would explain this to a jury." Second, the prosecutor asked Reed whether he ever had a conversation with the victims' family or friends "prior to January of 2009." This date was apparently used because it is the date of Reed's arrest. Presumably, Reed received *Miranda* warnings at this point.

We must merely assume this fact because the record does not establish when Reed was given the *Miranda* warnings. The failure to establish the point when the warnings were given is by itself sufficient to defeat Reed's argument. See *Wilkerson*, 278 Kan. at 157 (noting record did not establish whether person was in custody or had received *Miranda* warnings before refusing to talk to investigators); 3 LaFave, Israel, King & Kerr, Criminal Procedure § 9.6(a), p. 497 n.47 (3d ed. 2007) (where a defendant asserts a *Doyle* violation, the defendant "ordinarily bears the burden of showing that *Miranda* warnings were given prior to the post-arrest silence used by the state for impeachment purposes").

Nevertheless, even if we accept that the date of arrest sufficiently establishes the date on which *Miranda* warnings were given, Reed's argument fails. The prosecutor's second reference focused on the time period "prior to January of 2009" and thus only targeted Reed's *prearrest* silence. To the extent it implies Reed's prearrest silence, it did not violate Reed's rights under *Doyle*. See *State v. Hernandez*, 284 Kan. 74, 91-92, 159

21

P.3d 950 (concluding *Doyle* violation not established when prosecutor's question was unclear regarding whether referring to pre- or post-*Miranda* silence), *cert. denied* 552 U.S. 1025 (2007); *Tully*, 293 Kan. at 188 (no *Doyle* violation when reference is to pre-*Miranda* silence).

The prosecutor's first reference—indicating that, at the time of trial, Reed had had nearly 2 years "to think about how you would explain this to a jury"—focused on the period between September 2008 and the trial in July 2010 and necessarily included both prearrest and postarrest time. Nevertheless, the prosecutor never mentioned law enforcement officers or Reed's refusal to speak to them; thus, there was no indication Reed's silence, if any, was induced by governmental action or the exercise of his constitutional rights.

Further, the question was poorly worded and led to an exchange between the prosecutor and Reed in an effort to pin down how the 2 years was being calculated, and the answer was at best ambiguous. Ultimately the question was rephrased to ask whether Reed had talked to either C.T.'s or A.R.'s families or friends about the accusations, which was permissible because it did not target governmentally induced, post-*Miranda* silence.

Consequently, Reed fails to provide a record establishing a *Doyle* violation.

NO ERROR TO ACCUMULATE

In Reed's final attack on his convictions, he claims the cumulative effect of the errors in the case, when considered in total, merits reversal. As the previous discussions have shown, however, we have not found any trial errors, and the cumulative error doctrine "does not apply if no error or only one error supports reversal." *State v. Dixon*, 289 Kan. 46, 71, 209 P.3d 675 (2009) (citing *State v. Carter*, 284 Kan. 312, 332, 160 P.3d 457 [2007]).

Finally, Reed argues that the imposition of life sentences without the possibility of parole for 40 years, under the circumstances of this case, is cruel and/or unusual punishment under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. Citing *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), and its factors for evaluating whether a particular defendant's sentence is cruel or unusual, Reed argues that when "[v]iewed on a continuum of other cases involving the crime of Aggravated Indecent Liberties with a Child, the acts in this case are far less egregious than the typical case." He lists various factors that he believes should minimize his punishment. Specifically, Reed argues that his actions against C.T. and A.R. were not violent, and his encounter with each girl was "short in duration." Reed recognizes that he was a registered sex offender at the time of the offenses in this case but attempts to diminish this fact by arguing, with no citations to the record, that his past convictions "involved consensual sexual contact with a 15-year-old girl." In addition, Reed argues that he was a "hard-working husband and father" and was "gainfully and steadily employed" at the time of trial; again, he does not provide citations to the record to support these assertions.

The trial judge did not make findings regarding these alleged facts. Nevertheless, in his appellate brief, Reed essentially asks this court to make the necessary factual findings or to remand the case to the district court for the same. This argument loses on three fronts.

First, "appellate courts do not make factual findings but review those made by district courts." *State v. Berriozabal*, 291 Kan. 568, 591, 243 P.3d 352 (2010).

23

Second, this court has consistently declined to address a defendant's appellate argument regarding cruel and/or unusual punishment when the defendant has failed to develop the record below or, at least, cite to the record. See, *e.g.*, *State v. Roberts*, 293 Kan. 1093, 1096-97, 272 P.3d 24 (2012); *State v. Levy*, 292 Kan. 379, 384-85, 253 P.3d 341 (2011); *State v. Trevino*, 290 Kan. 317, 320-22, 227 P.3d 951 (2010); *State v. Mondragon*, 289 Kan. 1158, 1163-65, 220 P.3d 369 (2009); *State v. Ortega-Cadelan*, 287 Kan. 157, 159-61, 194 P.3d 1195 (2008); see also Supreme Court Rule 6.02(a)(4) (2013 Kan. Ct. R. Annot. 39) (facts included in appellant's brief "must be keyed to the record on appeal by volume and page number"; court presumes "that a factual statement made without a reference to volume and page number has no support in the record on appeal").

Reed attempts to distinguish these cases by pointing out that he raised his constitutionality argument at his sentencing hearing. In this regard, he is correct—he did more than some other defendants. Yet, he did not do enough, which brings us to the third front on which his argument fails:  Reed ignores the fact that he neither objected to the judge's insufficient findings at the hearing, nor subsequently filed a motion under Supreme Court Rule 165 (2013 Kan. Ct. R. Annot. 265) or otherwise asked the sentencing judge to make factual findings.

In *State v. Seward*, 289 Kan. 715, 721, 217 P.3d 443 (2009), this court made it clear that "a defendant who wishes to appeal on the basis of a constitutional challenge to a sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary." See Supreme Court Rule 165. Reed's sentencing took place on October 8, 2010, and his journal entry was filed on October 12, 2010. The *Seward* opinion was filed on October 2, 2009, a full year before Reed's sentencing. A remand for factual findings is not appropriate in this case.

24

Because of the factual components of Reed's arguments, Reed should have been aware that he was responsible for making sure there were adequate findings on the record. Having failed to do so, Reed's state and federal constitutional challenges fail, and we affirm the sentencing judge's imposition of concurrent life sentences without the possibility of parole for 40 years.

Affirmed.

MORITZ, J., not participating.