NOT DESIGNATED FOR PUBLICATION

No. 117,826

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SCOTTIE E. LINDSAY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL GROSKO, judge. Opinion filed June 7, 2019.
Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Ethan Zipf-Sigler*, assistant district attorney, *David Greenwald*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., PIERRON and MALONE, JJ.


PER CURIAM: Scottie E. Lindsay appeals his convictions of second-degree murder, attempted second-degree murder, and criminal possession of a firearm. He raises several issues on appeal.

First, Lindsay argues the district court erred by sua sponte barring his counsel from questioning a witness in a way that would have elicited an opinion about Lindsay's guilt. Because we find that evidence was inadmissible and the district court had an independent duty to insure it was not admitted, there was no error. Moreover, Lindsay did

1

not proffer what the testimony would have been, if allowed, thus precluding our review on appeal.

Second, Lindsay argues the district court erred when it denied his motion for a new trial based on his trial counsel's ineffectiveness. He claims his trial counsel was ineffective for failing to object to the admission of a witness' recorded statement after that witness had testified. But trial counsel did have a chance to cross-examine the witness about the statement and even if counsel was ineffective, Lindsay cannot establish that he was prejudiced by counsel's actions.

Next, Lindsay correctly argues that the district court abused its discretion when it did not inquire whether there was a conflict with trial counsel regarding Lindsay's motion for new trial claiming trial counsel's ineffectiveness. But we find that ultimately the error was harmless.

Finally, we find there was only one nontrial error, so there was no cumulative error.

FACTUAL AND PROCEDURAL HISTORY

The State charged Lindsay with first-degree murder, attempted first-degree murder, and criminal possession of a firearm. The charges stemmed from conduct that occurred in mid-March 2015. The following is a summary of the facts established during Lindsay's jury trial.

At the time of the crime, Julius Lamint Boyd lived with Melinda Bates-Fuller. On the day in question, Michael Wright and Lindsay were also staying at Boyd's house. After spending the night, Lindsay woke up the next morning and was agitated because he thought someone took his cocaine. Wright was awake at the time and he contacted a

2

friend to come pick him up so that he could go to the casino. Boyd told Lindsay that Wright might have taken the cocaine since he left so quickly.

Boyd testified Lindsay then went outside and Lindsay's cousin arrived to give Lindsay a pistol. Lindsay then left Boyd's house. Sometime after leaving Boyd's home, Lindsay went to the casino and found Wright. Brandy Stroble was driving and Lindsay showed Wright his pistol and told him to get in the car. Lindsay said they were going to Boyd's house to figure out who took his cocaine. According to Wright, he, Stroble, and Lindsay used methamphetamine on the way to Boyd's house.

Wright, Stroble, and Lindsay arrived at Boyd's house and entered through the back door. Lindsay and Boyd talked about Lindsay's missing cocaine. Boyd pointed to an area where it could have gotten lost. As Boyd was pointing, he was shot. Boyd did not know who shot him, but as he laid on the ground he saw a gun in Lindsay's hand. Boyd then saw Lindsay shoot him a second time. The shots hit Boyd in the neck and arm. Boyd testified that he saw Lindsay and Wright run toward the stairs which led to where Bates-Fuller was sleeping. Boyd heard gunshots from upstairs and then Wright and Lindsay ran downstairs and left the house.

Officer Tommy Lee with the Kansas City Police Department responded to the scene and saw Boyd on the floor with bullet wounds. Officer Lee asked Boyd if he knew who shot him and Boyd told him it was Wright and Lindsay. Officer Lee then searched the rest of the house and found Bates-Fuller's body.

Wright's version of events at the house was largely the same as Boyd's. But Wright said that after Lindsay shot Boyd, he and Stroble ran out of the house to Stroble's car.

Stroble also testified at trial. According to Stroble, she gave Lindsay a ride around town to look for his car, which had been stolen. They drove past the casino, saw Wright,

3

and picked him up. Stroble said that when they arrived at Boyd's house she went inside, used the restroom, and then went back out to her car. At trial, Stroble testified that she did not tell police that she saw Lindsay with a gun or heard gunshots. She also testified that she did not remember discussing with police Lindsay's missing Crown Royal bag, which purportedly contained the missing drugs. Defense counsel cross-examined Stroble and she was released from her subpoena.

Later in the trial the State called Detective Steve Mansaw as a witness. Detective Mansaw interviewed Stroble. The interview was recorded and the State offered the audio recording as evidence without objection. The recording was played for the jury.

The State also called Amber Pavelich, Stroble's sister, as a witness. On cross-examination, Amber testified that while Lindsay was in jail she sent him a letter saying that she knew he did not have a gun on the day of the crime. Defense counsel asked Pavelich questions which the court, sua sponte, interrupted. The questions and the court's interruption were:

"Q. And how do you know he didn't have a gun?

"A. I've known him for a long time. I've never seen him with a gun. I've never seen him act violent or any of that type.

"Q. Okay. And then one of the things that you also said was, and I'm assuming this is in reference to the homicide charge that Mr. Lindsay is on—here on today, is that you know he's not guilty of that quote 'bullshit', end quote. That's what you wrote?

"THE COURT:  I can't let this in, I'm sorry, even if the State's not gonna object. You know this is not admissible a witness's opinion of the guilt or innocence of somebody. I'm just not gonna allow it and I don't know why you didn't object and I don't know why you asked. I'm not—hold on—I'm not gonna have this kind of stuff in my courtroom in a trial from anybody, so stop it.

4

"[Defense counsel]: May I—

"THE COURT: Don't respond. You ask proper questions.

"[Defense counsel]: Let me ask this, Your Honor, I was gonna ask what facts she had of that. Am I allowed to do that?

"THE COURT: No. You're soliciting an opinion from her. That is stricken. You are to disregard her testimony regarding her opinion of anything."

Defense counsel then stated he had no other questions. The State asked to approach, provided its reason for not objecting, and then asked the court to clarify what was stricken. The court clarified to the jury that "[a]nything that was elicited from this witness in the form of an opinion regarding the defendant and what she based on knowing him, thinks he would or would not do . . . is stricken and is not to be considered by you as evidence in this case."

Lindsay testified and generally denied the charges, claiming that he was not present and was at his own house all day.

The jury found Lindsay guilty of second-degree murder, attempted second-degree murder, and criminal possession of a firearm by a convicted felon.

Lindsay's attorney moved for a new trial arguing: (1) the verdict was contrary to the evidence presented at trial; (2) the court erred in preventing counsel from questioning Pavelich about any facts she had that supported her opinion that Lindsay was not guilty; (3) the court erred by submitting lesser included offense instructions; (4) the State made inflammatory statements during closing argument; and (5) his attorney erred by failing to object to the State's presentation of the recorded statement of Stroble after she had already testified at trial. In an amended motion, Lindsay also argued: (6) the State failed

5

to disclose certain evidence and (7) the State submitted evidence without proper foundation.

The court denied Lindsay's motion reasoning, in part, that the court did not prevent Pavelich from testifying to any facts. Instead, the court said that it only prevented Pavelich from expressing her personal opinion on Lindsay's guilt. The court also refused to "Monday morning quarterback" on the issue of Stroble's recorded statement being admitted. But the court said if counsel did err, the error was harmless given the evidence presented.

The court sentenced Lindsay to a total of 688 months in prison. Lindsay timely appeals.

ANALYSIS

On appeal, Lindsay argues the district court:  (1) violated his right to present a defense by denying counsel the opportunity to fully cross-examine Pavelich; (2) committed judicial misconduct by sua sponte stopping counsel's cross-examination of Pavelich; (3) erred by denying his motion for a new trial based on ineffectiveness of counsel; and (4) erred by failing to appoint conflict free counsel to address the motion for new trial. Lindsay also argues that cumulative error deprived him of a fair trial.

6

*The district court did not violate Lindsay's right to present a defense by barring Lindsay's attorney from asking Pavelich questions which would elicit an opinion regarding his guilt or innocence.*

*Our standard of review is de novo.*

The trial court violates a criminal defendant's fundamental right to a fair trial if the court excludes relevant, admissible, and noncumulative evidence which is an integral part of the theory of the defense. However, the right to present a defense is subject to statutory rules and judicial interpretation of the rules of evidence and procedure. *State v. Roeder*, 300 Kan. 901, 927, 336 P.3d 831 (2014). "'When a criminal defendant claims that a district judge has interfered with his or her constitutional right to present a defense, we review the issue de novo.'" 300 Kan. at 927 (quoting *State v. Carter*, 284 Kan. 312, 318-19, 160 P.3d 457 [2007]).

*The judge was required to prevent a witness from expressing an opinion regarding the defendant's guilt.*

The right to "confront and cross-examine witnesses" is essential to due process. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). A defendant also has the right to present his or her defense. However, the right is not without limits. The right to present a defense does not mean the defendant can present inadmissible evidence. See *State v. Meeks*, 301 Kan. 114, 117, 339 P.3d 766 (2014).

A witness is not allowed to give an opinion on whether a defendant is guilty. Nor is a witness allowed to testify in a way that can be construed as offering an opinion on the defendant's guilt or innocence. *State v. Drayton*, 285 Kan. 689, 701-02, 175 P.3d 861 (2008) (holding that a district court has "no discretion" to allow a witness to testify

7

regarding the witness' opinion of the defendant's guilt and a judge is required to bar such testimony because it is "inadmissible as a matter of law").

Here, the court interrupted the defense's cross-examination of Pavelich when counsel said "one of the things that you also said was . . . that you know [Lindsay is] not guilty of that quote 'bullshit', end quote. That's what you wrote?" This question, and counsel's proposed follow up of asking "what facts she had of that" cross the line to impermissible opinion evidence. See 285 Kan. at 699-701. While the question did not explicitly ask Pavelich for her opinion of whether Lindsay was guilty, it did do so indirectly. See 285 Kan. at 700.

The district court's ultimate decision to bar the testimony was not an error. In fact, our Supreme Court clearly demands that the trial judge take the initiative to prevent such evidence from being elicited. 285 Kan. at 701.

*The exclusion of Pavelich's opinion testimony did not deny Lindsay the right to present his defense.*

Nor did the district court's decision impact Lindsay's ability to present a defense. Lindsay was still able to testify that he was at home the day of the crime. Lindsay also called other witnesses to support his case. Jeremiah Bly testified he went to a house where Stroble was staying and she tried to sell him a pistol. Bly also testified that Lindsay was there most of the day after the crime and he never saw him with the pistol. Clinton Ross also testified on behalf of Lindsay. Ross testified he saw Lindsay the day after the shooting and did not see him with a pistol. In closing arguments, Lindsay's attorney pointed out the inconsistencies in the State's case and argued the physical evidence did not match up with the State's version of events.

8

*Lindsay's counsel did not proffer the evidence he hoped to elicit from Pavelich.*

Moreover, even if the judge was not required to bar the testimony, counsel did not proffer what he expected Pavelich would testify if he was allowed to ask his questions. See K.S.A. 60-405 ("A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."). "The standard for a satisfactory proffer is whether the proffer contains the *substance* of the excluded testimony." *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, 623, 822 P.2d 591 (1991). When the party fails to provide a sufficient proffer of the substance of the evidence, appellate review is precluded because the appellate court lacks a basis to consider whether the trial court abused its discretion. *State v. Swint*, 302 Kan. 326, 332, 352 P.3d 1014 (2015). Without any information regarding what the substance of Pavelich's testimony would have been, we cannot determine whether the trial court abused its discretion.

*The district court did not err by denying Lindsay's motion for new trial based on the ineffectiveness of his trial counsel.*

*We set forth our standard of review.*

When the district court conducts an evidentiary hearing on claims of ineffective assistance of counsel, the appellate courts review the district court's factual findings using a substantial competent evidence standard. We review the district court's legal conclusions based on those facts applying a de novo standard of review. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

9

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *Chamberlain v. State*, 236 Kan. 650, 656, 694 P.2d 468 (1985). To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

*Lindsay's counsel was not ineffective.*

Lindsay argues his trial counsel was ineffective because counsel did not object to the introduction of Stroble's recorded statement to police. Lindsay argues the statement was inadmissible hearsay because Stroble had already testified and was released from her subpoena and was unavailable for cross-examination when the statement was introduced. When the district court ruled on the issue, it held that even if counsel erred, the error was harmless.

Lindsay's trial counsel did not offer a reason explaining why he did not object to Stroble's recorded statement being admitted at trial. Instead, at the hearing on his motion for a new trial, Lindsay's trial counsel said, "I'm sure there was a reason at the time that I didn't object, but clearly probably should have." We note he had received a copy of the audio recordings in the case at least seven months prior to trial.

Under K.S.A. 2018 Supp. 60-460(a) "[a] statement previously made by a person who is present at the hearing and available for cross-examination with respect to the

10

statement and its subject matter" is admissible hearsay. The Kansas Supreme Court has held if the witness is actually present and testifies at trial the previous out-of-court statements are admissible whether admitted before or after the witness testifies. *State v. Davis*, 236 Kan. 538, 541, 694 P.2d 418 (1985). The court reasoned so long as the defendant has an opportunity to cross-examine the witness the Confrontation Clause is satisfied. 236 Kan. at 541.

Likewise, in *State v. Reed*, 300 Kan. 494, 505, 332 P.3d 172 (2014), the Kansas Supreme Court held that K.S.A. 60-460(a) applied when the State admitted a witness' prior statement after defense counsel had cross-examined the witness. In *Reed*, the defendant was charged with two counts of aggravated indecent liberties with a child. After each incident leading to the charges occurred, the victims wrote down what happened. The notes were admitted into evidence over Reed's objection. One note was not admitted into evidence until after the victim had testified. On appeal, the Kansas Supreme Court held the hearsay exception applied. The court reasoned defense counsel had an opportunity to cross-examine the victim about her written statement even though the statement was not admitted until after the victim completed her initial testimony. 300 Kan. at 505.

In this case, Stroble testified and was cross-examined before her recorded statement was admitted. However, during her direct testimony the State referred to her recorded statement during questioning. For example, Stroble testified that she did not remember if Lindsay seemed agitated because he was missing something the day of the crime. The State referred her to her statement to police where she said that Lindsay was missing a Crown Royal bag. She also testified she did not remember what Lindsay and Boyd talked about when they arrived at Boyd's house. The State asked her to look at her previous statement and Stroble then said Lindsay talked about resolving the issue "like men." Stroble testified that she did not hear anything after she left the house. But after looking at her statement to police she testified she heard a gunshot. Stroble also testified

11

that she never saw Lindsay with a gun and she did not hear a second gunshot. Although defense counsel did not specifically refer to Stroble's recorded statements during cross-examination, he did question Stroble regarding facts that were only found in her recorded statements, such as Wright exiting the house with his hoodie up over his head and crouched down in the back of the car.

Lindsay was able to cross-examine Stroble about her recorded statement. The Kansas Supreme Court in *Davis* held that a witness may testify before or after the admission of hearsay evidence so long as cross-examination is available. *Davis*, 236 Kan. at 541. Accordingly, even if counsel had objected to the admission of the statements "after the fact," consistent with the caselaw, we feel confident it would not have been granted. Counsel cannot be found to be ineffective for failing to make an objection that would have been unsuccessful. Moreover, had he made the objection successfully, the State could have easily cured the problem by recalling Stroble to the stand.

But even if Lindsay's counsel was ineffective, he is still required to show he was prejudiced. See *Sola-Morales*, 300 Kan. at 882.

*Lindsay was not prejudiced by his counsel's failure to object to the introduction of Stroble's recorded statement.*

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must not only establish that the performance of defense counsel was deficient but also that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales*, 300 Kan. at 882.

The content of Stroble's recorded statement and her testimony at trial were largely the same. The main areas of difference were addressed by the State in its direct examination of Stroble. Stroble told the police in her recorded statement that Lindsay was

12

missing a Crown Royal bag and that she heard a gunshot. But at trial, Stroble testified she did not see Lindsay with a gun and did not hear a second gunshot. The State insinuated that Stroble told the police differently but did not explicitly state that Stroble told police she saw Lindsay with a gun and heard a second gunshot. The remaining important details in Stroble's recorded statement were essentially the same as her testimony at trial.

During closing arguments, the State referred to Stroble's testimony and recorded statement. The State acknowledged Stroble's testimony and recorded statement were not exact matches. The State told the jury to use its common sense "when you're considering what she told the police, which is still evidence in this case, and what she testified to at trial."

On the other hand, Lindsay's counsel pointed out the inconsistencies between Stroble's and Wright's testimony. Other than that, he did not focus on Stroble's testimony or her recorded statement to police.

Even if Stroble's recorded statement was not introduced, her testimony combined with the testimony of Boyd and Wright was enough to convict Lindsay. While some details between the three witnesses were inconsistent, the overarching details remained similar. Boyd, Stroble, and Wright testified that Lindsay was present at the house and upset about something going missing. Stroble's testimony placed Lindsay at the scene when she heard a gunshot. After the gunshot she saw Wright leave the house a minute before Lindsay left the house. Wright testified that he ran out of the house right after Lindsay shot Boyd. And Boyd testified Lindsay shot him. Stroble's recorded statements to police were not different enough from her testimony to impact the jury's decision in this case. Lindsay fails to show there is a reasonable probability the outcome of his trial would have been different if Stroble's recorded statement had not been admitted as evidence.

13

*The district court did not commit reversible error by failing to inquire about the need to appoint replacement counsel for Lindsay's motion for new trial.*

Lindsay argues the district court erred by failing to inquire if new counsel was needed to argue Lindsay's motion for new trial because his counsel arguing the motion was the same counsel that was allegedly ineffective.

*Our standard of review is abuse of discretion.*

Whether the district court adequately discharged its duty to inquire into the possibility a defendant's counsel has a conflict is reviewed for an abuse of discretion. *State v. McDaniel*, 306 Kan. 595, 606, 395 P.3d 429 (2017). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

When the trial court becomes aware of a possible conflict of interest between a defendant and his or her counsel, the court "'has a duty to inquire further.'" *State v. Sharkey*, 299 Kan. 87, 96, 322 P.3d 325 (2014) (quoting *State v. Vann*, 280 Kan. 782, Syl. ¶ 1, 127 P.3d 307 [2006]). "'[A] district court abuses its discretion when it makes no inquiry into the nature of the conflict. [Citation omitted.]'" 299 Kan. at 97 (quoting *State v. Stovall*, 298 Kan. 362, 370, 312 P.3d 1271 [2013]).

*The trial court abused its discretion when it failed to inquire about a conflict of interest with trial counsel.*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel at critical stages of a felony proceeding. The right applies to the states through the Fourteenth Amendment to the United States Constitution.

14

*Sharkey*, 299 Kan. at 92-93. A hearing on a timely filed motion for new trial "is a critical stage of the criminal proceedings, and a defendant has a Sixth Amendment right to the representation of counsel." 299 Kan. at 96. When a constitutional right to counsel exists, there is a "'correlative right to representation that is free from conflicts of interest. [Citations omitted.]'" 299 Kan. at 96 (quoting *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 [1981]).

In this case, Lindsay had a right to conflict free counsel at the hearing on his motion for new trial. See 299 Kan. at 96. Part of his motion alleged that his counsel was ineffective at trial. His counsel arguing the motion was the same counsel who was allegedly ineffective at trial. To advocate for Lindsay, his counsel was necessarily arguing against his own interest. This shows a possibility for conflict existed. The district court made no inquiry about the possible conflict of interest between counsel and Lindsay during the hearing on the motion for new trial. The district court abused its discretion by not inquiring about the possible conflict of interest. See 299 Kan. at 97.

But just because the court erred does not automatically require reversal. Instead, this court must determine whether the district court's error requires reversal.

*The error does not require reversal.*

When an attorney is representing conflicting interests—here arguing his own ineffectiveness—but the defendant registers no objection at the time, the caselaw requires us to examine the appropriate remedy under what has become known as the *Mickens* reservation, based on *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). The Kansas Supreme Court discussed the *Mickens* reservation in *State v. Galaviz*, 296 Kan. 168, 184, 291 P.3d 62 (2012). The *Galaviz* court noted that the United States Supreme Court was unclear in *Mickens* on how to determine the remedy for such an error. The *Mickens* Court noted it could examine the reversibility of the error based on

15

the standard set out in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (was there "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"), or it could examine the reversibility of the error based on the lesser standard set out in *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) (did the "conflict of interest adversely [affected the] lawyer's performance"). *Galaviz*, 296 Kan. at 184-85. Recently, our Supreme Court reiterated that the law is "unsettled" as to which standard is to be applied under the *Mickens* reservation. *McDaniel*, 306 Kan. at 610.

Lindsay argues that the *Cuyler* standard applies. The State argues the *Strickland* standard applies. But we find that under either standard, Lindsay is unable to prevail.

Lindsay's counsel clearly had a personal interest in not being found ineffective. But unlike the attorney in *State v. Toney*, 39 Kan. App. 2d 1036, 187 P.3d 138 (2008), cited for support by Lindsay, Lindsay's attorney urged to the district court to find that he was ineffective for not objecting to the admission of the audio recording. To that extent he argued against his own best interest and for his client's interest. So under the *Cuyler* standard, the conflict did not appear to affect counsel's performance.

Under the *Strickland* standard, for Lindsay to prevail we would have to find that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The only unprofessional error Lindsay claims is counsel's conflict in representing Lindsay during the motion for new trial. The only issue of ineffectiveness in the motion for new trial was counsel's failure to object to the admission of Stroble's recorded statement. We have already found that counsel was not ineffective for failing to object, because the objection lacked merit. And, even if it had merit, Lindsay was unable to show he was prejudiced by its admission.

16

So we have no hesitation finding that there was not a reasonable probability the result of the trial would have been different had the alleged ineffectiveness not occurred. Ultimately, the result would have been the same. Accordingly, we need not remand for a new hearing, with conflict free counsel, on Lindsay's motion for a new trial.

*Cumulative error did not deprive Lindsay of a fair trial.*

"In a cumulative error analysis, an appellate court aggregates all errors and, even though those errors would individually be considered harmless, analyzes whether their cumulative effect on the outcome of the trial is such that collectively they cannot be determined to be harmless." *State v. Tully*, 293 Kan. 176, 205, 262 P.3d 314 (2011). A single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018).

Of all the issues raised by Lindsay, we have found only one error—failure to appoint conflict free counsel for filing and arguing a motion for new trial. But we concluded that the error was harmless. Moreover, this was not a *trial* error, which is what the cumulative error doctrine was meant to address. Even if it were a trial error, a single trial error cannot support a reversal under the cumulative error doctrine. See *Gonzalez*, 307 Kan. at 598. Accordingly, this claim of error fails.

Affirmed.