NOT DESIGNATED FOR PUBLICATION

No. 126,220

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HUMBERTO L. PALACIO JR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Submitted without oral argument. Opinion filed May 17, 2024. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., MALONE and WARNER, JJ.


PER CURIAM: A jury convicted Humberto L. Palacio Jr. of one count of indecent liberties with a child, two counts of aggravated assault, and one count criminal possession of a firearm. Palacio now appeals the indecent liberties with a child conviction, raising a jury instruction error claim, challenging the sufficiency of the evidence, and asserting prosecutorial error. After thoroughly reviewing the issues presented, we affirm Palacio's conviction.

1

After a jury trial, Palacio was convicted of four felonies: one count of indecent liberties with a child; two counts of aggravated assault; and one count of criminal possession of firearm by a felon. On appeal, he only challenges the indecent liberties conviction, so a recitation of the facts related to the other charges is not necessary.

Jane Doe and Mary Roe (pseudonyms for the two minors involved here) met in first grade and had been best friends ever since. Jane was spending the night at Mary's house. Mary's mother L.C. and Palacio had gone to a bar and returned later with their friend. They were "super drunk, like almost blackout drunk." L.C. was "falling everywhere" and Palacio was being "aggressively rude with words." At one point Jane was walking in the kitchen and Palacio "gripped" her butt "probably like at least three" times and she told him to stop. Nobody else saw Palacio touch her butt. Jane left and went to Mary's bedroom to tell her about it, but Mary left to talk to L.C. in the kitchen. Palacio later came into the bedroom and asked, "why are you in here sitting by yourself" and sat next to Jane. Palacio began "rubbing his hand on my leg and my inner thigh" near her private area, so she pushed him away and told him to stop. Nobody else was in the bedroom.

Jane told Mary that Palacio had touched her inappropriately. Mary denied seeing Palacio touch Jane at any point, but she recalled Jane crying and saying he "touched her again," describing that he "gripped her thigh or touched her thigh in an inappropriate way" at some point. At that point, L.C. and Mary entered the room and L.C. told Palacio it was time to take his friend home.

After Jane told Mary about Palacio touching her inappropriately, the girls stayed in Mary's bedroom because "we were pretty upset, like uncomfortable." After that Palacio

2

came into the bedroom and tried to get the girls to leave with him to take Palacio's friend home.

Jane said she felt "[v]iolated" and "disrespected" when Palacio touched her butt. As for the touching in the bedroom, Jane described feeling "[d]isgusted because I just froze, and then I, you know, proceeded to move his hand, and he proceeded to move closer, and I just felt helpless." Jane and Mary both estimated that the incident occurred during a 45-minute timeframe, from when Palacio returned to the house and then left to take his friend home.

After Palacio left, Mary texted her brother (Brother) to come pick them up. Brother's girlfriend, C.M., drove there and took Jane and Mary back to Brother's house, where they explained what had happened. The next day, C.M. took Jane home, where Jane told her mother (Mother) briefly about the incident. After a while, Jane's stepfather (Father) called Jane and she told him as well, after which Father and Jane made separate police reports.

According to Mother, Jane seemed upset and was crying a bit as she recounted the incident. Jane told her that she was in Mary's bedroom when Palacio entered the bedroom and sat down next to her. Jane said Palacio proceeded to touch her thigh and moved his hand closer to her inner thigh, then Jane grabbed his hand and pulled it away. At that point, Mary and L.C. entered the room and L.C. told Palacio it was time to leave to take his friend home.

C.M. testified she received messages from Mary at around 5:45 p.m. on that day asking her to pick Mary up. C.M. picked up Mary and Jane from a gas station near L.C.'s house. Screenshots of the text conversation between Mary and C.M. advised her that "[Palacio] touched [Jane's] ass." During the car ride, Jane and Mary described what had happened but Jane was more talkative. Jane told C.M. that she was in Mary's bedroom

3

when Palacio's friend came into the room and began making comments and making her uncomfortable.

Brother testified that C.M. showed him the text messages from Mary after they arrived at his house that day. He did not speak to Mary at first because he wanted to give her a few hours to settle in and stop crying. Brother said Mary was "[v]ery timid" and "definitely not in her normal state." He eventually talked to both girls to ask them what happened. Mary seemed like she did not want to discuss it, but Jane was more eager and pushing Mary to open up about the incident. Brother could not remember specifically but believed that Jane said Palacio touched either her breasts or butt.

Officer Melinda Blank met with Mother, Father, and Jane. The story relayed to her about what happened to Jane aligned with the above.

The jury convicted Palacio of one count of indecent liberties with a child among other crimes unrelated to this appeal.

ANALYSIS

I.      THE DISTRICT COURT DID NOT ERR IN FAILING TO PROVIDE A UNANIMITY
        INSTRUCTION

Palacio first argues the district court erred by failing to provide a unanimity instruction for the indecent liberties with a child charge involving Jane.

Appellate courts review unanimity instruction error claims under a three-part framework. First, using an unlimited standard of review, this court must determine whether jurors heard evidence of multiple acts, each of which could have supported a conviction on a charged crime. If so, this court will then consider whether error was

4

committed by determining whether the State or district court failed to inform the jury which act to rely on or direct the jury that it must agree on the specific act for each charge. Finally, this court will then determine whether that error was reversible or harmless. *State v. Smith*, 317 Kan. 130, 136, 526 P.3d 1047 (2023). Because Palacio concedes that he did not request a unanimity instruction, this court will review for clear error under K.S.A. 22-3414(3) at the final step. 317 Kan. at 136.

  A. *There were multiple acts here.*

  Under the Sixth Amendment, a criminal defendant has the right to a unanimous jury verdict in both federal and state court. *Ramos v. Louisiana*, 590 U.S. ___, 140 S. Ct. 1390, 1397, 206 L. Ed. 2d 583 (2020). Similarly, relying on K.S.A. 22-3421, the Kansas Supreme Court has found that "[w]hen a case involves multiple acts, the jury must be unanimous in finding which specific act constitutes the crime." *State v. King*, 297 Kan. 955, 977-78, 305 P.3d 641 (2013).

  Multiple acts are "legally and factually separate incidents that independently satisfy the elements of the charged offense." *State v. De La Torre*, 300 Kan. 591, 598, 331 P.3d 815 (2014). Stated another way, multiple acts cases do not involve what the Kansas Supreme Court has called "'unitary conduct.'" *State v. King*, 299 Kan. 372, 379, 323 P.3d 1277 (2014) (quoting *State v. Colston*, 290 Kan. 952, 962, 235 P.3d 1234 [2010]). Appellate courts have used four factors to determine whether multiple acts constitute unitary conduct: (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular, whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct. *State v. Schoonover*, 281 Kan. 453, 507, 133 P.3d 48 (2006). But there is no single test for whether conduct constitutes one act or separate and distinct multiple acts. Instead, courts must look to the facts and theory of the crime as argued. *State v. Mattox*, 305 Kan. 1015, 1028, 390 P.3d 514

5

(2017). Thus, the question is whether the touching incidents that occurred here constitute separate and distinct acts as Palacio suggests, or whether they form a single course of continuous conduct as the State suggests.

Unlike other cases involving sex offenses committed against children, the multiple acts at issue here are more easily discernable. The parties agree that the trial evidence shows two specific instances of touching that could have qualified as indecent liberties with a child involving Jane: (1) Palacio touching Jane's butt in the kitchen, and (2) Palacio touching Jane's leg and inner thigh in Mary's bedroom. See K.S.A. 21-5506(a)(1) (requiring proof of "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both"). We have no problem concluding that the acts occurred at or near the same time and at the same location—Mary's house. The closer issue is whether there was a causal relationship between the acts, in particular, whether there was an intervening event; and whether there was a fresh impulse motivating some of the conduct. We turn to other cases for guidance.

The Kansas Supreme Court has held that separate acts of penetration may constitute separate acts of rape, despite occurring close together. See *State v. Foster*, 290 Kan. 696, 713-15, 233 P.3d 265 (2010) (separate instances because victim put clothes back on and defendant murdered another victim before second penetration); *State v. Zamora*, 247 Kan. 684, 694, 803 P.2d 568 (1990) (charges for rape by digital penetration and penetration with male sex organ not multiplicitous). But the case most aligned with the facts here is *State v. Sellers*, 292 Kan. 346, 253 P.3d 20 (2011), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

Sellers touched the minor victim's breast while they were lying with her mother on her mother's bed, then he "left the room to go check on the family's dog, which was making noise in another room." 292 Kan. at 349. He was out of the bedroom for 30 to 90

seconds. The defendant came back into the room, "checked to see if [the victim's] mother was asleep," lay back down on the bed, and touched the victim's "pubic area." 292 Kan. at 349-50. The defendant "got off the bed again and walked over to [the victim's] mother's side of the bed to see if she was still asleep." 292 Kan. at 350. "He then walked to [the victim's] side of the bed and started to push [her] shirt up," and the victim woke her mother. 292 Kan. at 350.

Sellers argued on appeal that his convictions for (1) touching the victim's breast and (2) touching the victim's pubic area were multiplicitous. The Kansas Supreme Court disagreed. Although as here, the court held that "the acts occurred at or near the same time and in the same location," it turned to "whether the break to check on the dog in another room was sufficient to constitute an intervening event and whether Sellers formulated a fresh impulse to reoffend in the time between leaving the room and returning to the bed." 292 Kan. at 358-59.

The *Sellers* court concluded:

"[T]his case is a close call. The sequence of events is subject to the interpretation that Sellers checked on the dog, and, for that matter, on the continuing slumber of [the victim's] mother, to ensure that no noise impeded his overall plan to molest [the victim]. But he did leave the room for 30 to 90 seconds, breaking the chain of causality and giving him an opportunity to reconsider his felonious course of action. The district [court] judge ultimately determined that Sellers had to make a second conscious decision to touch [the victim], and, acknowledging the difficulty of this call, we agree. The conduct underlying [the two charges] was not unitary." 292 Kan. at 359-60.

Palacio correctly points out that the acts occurred in separate rooms with no clear timeline as to how far apart they occurred. After touching Jane's butt, Palacio followed Jane and finding her alone again touched her leg and inner thigh. As in *Sellers*, the only evidence of an intervening event was the victim leaving the room to escape further

7

molestation by the defendant. And as in *Sellers*, we find this broke the chain of causality giving Palacio an opportunity to reconsider his actions.

But the finding that there were multiple acts does not end our discussion.

B.      *Even if there were multiple acts, the State avoided error by making an election.*

Even assuming multiple acts occurred, the existence of multiple acts alone does not establish error because the State clearly made an election during closing statements. Because there is no dispute that the district court omitted a unanimity instruction, the inquiry would turn to determining whether the State adequately informed the jury which act to rely on to establish the charge during its deliberations. *King*, 297 Kan. at 978 (citing *State v. Voyles*, 284 Kan. 239, 244-45, 160 P.3d 794 [2007]).

Palacio contends the State made no election because the prosecutor discussed both touching acts multiple times during closing. The State asserts the prosecutor made the functional equivalent of an election by specifically informing the jury that the touching of Jane's thigh "is the form of touching that was the most offensive to [Jane], and I would submit to you that all 12 of you should agree that that is the form of touching that qualifies for this charge." See *State v. Moyer*, 306 Kan. 342, 361, 410 P.3d 71 (2017).

When discussing the indecent liberties with a child charge relating to Jane, the prosecutor stated:

> "[Jane] described being grabbed on her buttocks and when she testified she didn't recall those details as specifically. She kind of read a little of her transcript to kind of see what order things happened in. Her main focus was on the touching of her thigh. However, the touching of the buttocks and the touching of the thigh both qualify under this definition.

8

But more specifically the touching of the thigh is the form of touching that was the most offensive to [Jane], and I would submit to you that all 12 of you should agree that that is the form of touching that qualifies for this charge. Again, that the fondling or touching was in a manner which tends to undermine the morals of the child. [Jane] told you she felt extremely uncomfortable and she tried to move his hand away, she tried to make him stop, she moved her body away from his, and that didn't stop that touching from happening. It wasn't until other people came in the room that the touching stopped. And that this is so clearly offensive as to outrage the moral senses of a reasonable person. Any reasonable person in that same situation would feel offended by that form of touching under those circumstances. So again, it doesn't have to touch any sex organ, she doesn't have to be touched in her vaginal area. It doesn't have to use a penis in order to conduct that touching. And then the defendant intended to arouse or satisfy the sexual desires of [Jane], of himself, or both. Specifically again, this form of touching was designed to arouse the defendant. It's because he was getting off on it. He found it exciting. And we know that he was going to—that he was finding this exciting, and we know that he was doing this form of touching for his own desires because what does he do immediately beforehand? He has the touching of her buttocks multiple times in the kitchen. She goes into [Mary]'s bedroom. She's there alone. The defendant follows her in. He follows her in and says, 'Why are you in here alone?' And then he approaches her again. He sits down right next to her, not across from her, right next to her. Their legs are touching. He is right there. And then he uses his hand to start rubbing on her thigh, first the top portion and she demonstrated here in court, but then when she started to show the additional movement, his hand turned inwards, his fingers then reached in between her thighs in the inner portion near her underwear. That's when we know that it is for his own sexual desires. This isn't inadvertent, accidental touching. This is purposeful, this is intentional, and it's specifically to satisfy his own sexual desires that he gets off on this. So again, I would submit that the elements for indecent liberties of [Jane] have been satisfied."

Then, later when rebutting Palacio's defense pointing out the discrepancies between the girls' testimonies and discussing Jane's credibility, the prosecutor remarked that Jane had to be prompted to even remember the incident in the kitchen.

While Palacio is correct that the State referenced both touching acts in its closing, the full context of the prosecutor's closing statements shows that the State made an election by recommending that the jury consider the thigh touching as the basis for the charge. After making the election, the prosecutor went on to explain how the jury could find Palacio guilty based on the thigh touching because the prosecutor recognized that this act created a stronger case for conviction based on Jane's trial testimony. After that, the prosecutor only mentioned the first touching in passing to show a contrast between a touching that may have been "inadvertent [or] accidental," and a touching which was "purposeful [and] intentional, and it's specifically to satisfy his own sexual desires." The prosecutor's later reference to the initial touching during rebuttal was merely in response to the defense theory that the allegations were entirely fabricated and did not confuse the jury about which act the State was asking it to find Palacio guilty for.

C.      *Even if there were a unanimity error it was harmless.*

Finally, even if we assume error occurred and that the State failed to adequately make an election, any unanimity error was harmless. Under K.S.A. 22-3414(3), Palacio must demonstrate clear error by firmly convincing this court that giving the instruction would have made a difference in the verdict. *State v. Cooper*, 303 Kan. 764, 770, 366 P.3d 232 (2016). As both parties note, Kansas appellate courts have held the failure to give a unanimity instruction is generally reversible error "except when the defendant presents a unified defense, e.g., a general denial." *Voyles*, 284 Kan. at 253. "[I]n one of its purest forms," a unified defense presents "a mere credibility contest between the victims and the alleged perpetrator." 284 Kan. at 253-55 (noting that inconsistencies in victims' testimonies could confuse the jury and create lack of unanimity); see also *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013) (noting presentation of a unified defense or general denial "is merely an important and compelling factor in firmly convincing the reviewing court that the jury would have reached a different verdict had the instruction error not occurred").

10

Palacio contends he did not present a unified defense because his attorney used the evidence to argue Palacio lacked the requisite specific intent during the alleged touches and pointed out inconsistencies in Jane's and Mary's versions of events. Yet, Palacio's counsel only specifically argued that the evidence failed to show he touched *Mary* "with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." K.S.A. 21-5506(a)(1). The jury found him not guilty of touching Mary, the facts of which are immaterial here. In contrast, the only defense that was argued for the indecent liberties charge involving Jane was that the discrepancies in her own stories suggested she fabricated the touching allegations to bolster what had happened to Mary, so that Mary could get Palacio out of the house. Defense counsel even concluded by stating,

> "Ladies and gentlemen, you're going to have to decide with all that evidence if Mr. Palacio [touched] anyone, *if it was anyone other than* [*Mary*]*, which I submit to you it was not*, and if he touched [Mary], whether it was an accident, playful, or if it actually was intended to arouse. Thank you, ladies and gentlemen." (Emphasis added.)

Thus, Palacio's defense to the contested conviction essentially comes down to a credibility contest between himself and Jane. Although Palacio points out the inconsistencies in Jane's statements at trial versus her recorded statements, he fails to show how those inconsistencies could have led to jury confusion about which act of touching supported the indecent liberties with a child charge involving Jane. As he points out, Jane's trial testimony about the touching of her butt in the kitchen was ambivalent, which undercuts the suggestion that some jurors might have believed only that incident occurred. Moreover, the entirety of the jury's verdict on the other charges shows it simply did not believe his claim that the girls fabricated the allegations, especially considering the jury found him guilty of both aggravated assault charges based on similarly inconsistent statements by the victims.

Accordingly, we find no clear error in omitting a unanimity instruction.

11

II.     THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE INDECENT LIBERTIES WITH A
        CHILD CHARGE

Palacio next challenges the sufficiency of the evidence supporting the indecent liberties with a child charge involving Jane, arguing solely that the State failed to prove he had the specific intent required for the charge. In particular, he contends the State collapsed the elements of a "'lewd fondling or touching'" with the separate requirement of "'intent to arouse or satisfy the sexual desires'" of the defendant, victim, or both into a single element. The State counters that the jury could infer Palacio's intent based on circumstantial evidence, including the parts of Jane's body that he touched and the fact the acts of touching occurred while the two were alone. The State's argument is more persuasive.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.' [Citations omitted.]" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

As mentioned, to prove the crime of indecent liberties with a child, the State needed to prove that Palacio engaged in "[a]ny lewd fondling or touching of the person of . . . the child . . . with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both" as required by K.S.A. 21-5506(a)(1). To support his sufficiency argument, Palacio relies heavily on *State v. Ta*, 296 Kan. 230, 241-43, 290 P.3d 652 (2012). In that case, a jury convicted the defendant of two counts of aggravated indecent liberties with a child after he approached two young girls and began caressing their faces, hair, arms, and legs. When officers questioned Ta about the incident, he made repeated statements about wanting to have sex with children. On appeal, the Kansas Supreme Court reversed his convictions, concluding the evidence failed to show the defendant

12

engaged in lewd touching or fondling. 296 Kan. at 243. In reaching that conclusion, the court held that the defendant's mental state could not be used to determine whether a touching is lewd because the statute presents intent as a separate element. 296 Kan. at 242.

Palacio's reliance on *Ta* does not provide the full picture for the question presented here. Palacio makes no attempt to challenge the sufficiency of the evidence supporting the lewd touching element of the offense, so that element is not in dispute. To that end, Palacio appears to argue the inverse of the holding in *Ta*: that lewd touching should not be considered when determining whether a defendant possessed the requisite intent.

But as the State notes, convictions can be established by circumstantial evidence for even the gravest of offenses. *State v. Davis*, 275 Kan. 107, 118, 61 P.3d 701 (2003). "'[A]ctual arousal or satisfaction of the sexual desires of either participant is not necessary for the existence of the crime.'" *State v. Reed*, 300 Kan. 494, 502, 332 P.3d 172 (2014) (quoting *State v. Brown*, 295 Kan. 181, 201, 284 P.3d 977 [2012]); see also *State v. Rutherford*, 39 Kan. App. 2d 767, 776, 184 P.3d 959 (2008) ("With regard to arousal, this court further has held that proof of actual arousal is not required. Intent to arouse the sexual desires of the victim or the defendant is sufficient, which may be shown by circumstantial evidence."); *State v. O'Brien*, No. 124,524, 2024 WL 62815, at *5 (Kan. App. 2024) (unpublished opinion) ("The victims' testimonies demonstrated that O'Brien inappropriately touched them. A reasonable inference from this testimony would be that O'Brien did so with the intent to satisfy his sexual desires."), *rev. denied* 318 Kan. ___ (April 26, 2024).

Here, the trial evidence shows that Palacio touched Jane inappropriately on the leg and thigh in Mary's bedroom when nobody else was present, which made her feel "[d]isgusted" and "helpless." Jane also said Palacio only stopped when L.C. and Mary entered the bedroom. And although Jane could not recall it at first at trial, there was also

13

evidence presented that Palacio touched Jane's butt in the kitchen three times when nobody else was present. A reasonable inference can be drawn from the circumstantial evidence that Palacio had the intent to arouse himself or satisfy his sexual desires because he sought out Jane when she was alone, repeatedly touched parts of her body in ways that made her uncomfortable, and only stopped when others were present. A rational fact-finder viewing this evidence in the light most favorable to the State could conclude that Palacio was guilty of indecent liberties with a child.

III.     THE PROSECUTOR DID NOT MISSTATE THE LAW

Like the previous argument, Palacio contends the State committed prosecutorial error by misstating the law and collapsing the lewd touching element and the specific intent element into a single inquiry, thus depriving him of a fair trial. Palacio's argument is not convincing.

Appellate courts use a two-step process to evaluate claims of prosecutorial error: error and prejudice. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

As with his sufficiency claim, Palacio's argument on this point hinges on his belief that the State misstated the law by collapsing the separate elements of lewd touching and specific intent into a single inquiry. As support, he relies on *State v. Naputi*, 293 Kan. 55, 260 P.3d 86 (2011), in which the Kansas Supreme Court addressed a similar argument. But in that case, the court's basis for a finding of error stemmed from the prosecutor's specific remark recommending that the jury focus solely on the nature of the lewd touching and ignore the defendant's subjective intent. 293 Kan. at 60-61. In fact, the court found no error in another challenged remark in which the prosecutor accurately referenced the definitions of lewd fondling and the specific intent required to sustain a conviction. 293 Kan. at 60 ("[W]ithout more, we could find that the context of the first statement keeps it from exceeding the wide latitude afforded a prosecutor during closing arguments.").

The full context of the prosecutor's statements during closing properly separated the elements of the indecent liberties with a child charge and explained them accurately for the jury. For instance, after briefly discussing the age and venue requirements—which were not disputed—the prosecutor began discussing the lewd touching and specific intent elements with regards to the charge involving Mary. Although the jury ended up acquitting Palacio of that charge, the prosecutor's statements should still be considered because they were later incorporated by reference when discussing the charge involving Jane.

As for the lewd touching element, the prosecutor then referenced the jury instructions and argued that element was satisfied because Mary had stated she was uncomfortable, and that any reasonable person would have been offended in that situation. The prosecutor explained that "[l]ewd fondling or touching does not require contact with the sex organs" and "can be any form of contact that satisfies the top part of that definition." To the charge involving Jane, the prosecutor later stated:

"[T]he touching of the buttocks and the touching of the thigh both qualify under this definition. But more specifically the touching of the thigh is the form of touching that was the most offensive to [Jane], and I would submit to you that all 12 of you should agree that that is the form of touching that qualifies for this charge. Again, that the fondling or touching was in a manner which tends to undermine the morals of the child. [Jane] told you she felt extremely uncomfortable and she tried to move his hand away, she tried to make him stop, she moved her body away from his, and that didn't stop that touching from happening. It wasn't until other people came in the room that the touching stopped. And that this is so clearly offensive as to outrage the moral senses of a reasonable person. Any reasonable person in that same situation would feel offended by that form of touching under those circumstances. So again, it doesn't have to touch any sex organ, she doesn't have to be touched in her vaginal area. It doesn't have to use a penis in order to conduct that touching."

As for the specific intent element, the prosecutor explained the jury could find Palacio guilty of the charge involving Mary because:

"You can look at that type of touching and her description of it and determine for yourself what the defendant's intent was because actions speak louder than words. And ultimately the way that it's described, you can infer the defendant's intent. Why else is someone touching a young girl's breasts in that way, in that manner? It's to arouse some form of sexual desire. And specifically I would submit to you it is to arouse his own sexual desires, not solely that of [Mary]'s. So the defendant did this form of touching with the purpose of he gets off on it."

Later, when discussing the specific intent element in regard to the charge involving Jane, the prosecutor stated:

"Specifically again, this form of touching was designed to arouse the defendant. It's because he was getting off on it. He found it exciting. And we know that he was going to —that he was finding this exciting, and we know that he was doing this form of touching for his own desires because what does he do immediately beforehand? He has the touching of her buttocks multiple times in the kitchen. She goes into [Mary]'s bedroom.

16

She's there alone. The defendant follows her in. He follows her in and says, 'Why are you in here alone?' And then he approaches her again. He sits down right next to her, not across from her, right next to her. Their legs are touching. He is right there. And then he uses his hand to start rubbing on her thigh, first the top portion and she demonstrated here in court, but then when she started to show the additional movement, his hand turned inwards, his fingers then reached in between her thighs in the inner portion near her underwear. That's when we know that it is for his own sexual desires. This isn't inadvertent, accidental touching. This is purposeful, this is intentional, and it's specifically to satisfy his own sexual desires that he gets off on this. So again, I would submit that the elements for indecent liberties of [Jane] have been satisfied."

Put simply, the prosecutor did not misstate the law by advising the jury they could infer Palacio's specific intent from the mere nature of the lewd touching as he suggests. Unlike in *Naputi*, the prosecutor did not explicitly tell the jury to disregard the specific intent element and infer that element from the fact that a lewd touching occurred. See 293 Kan. at 60-61. Rather, the prosecutor merely referenced the acts of lewd touching when explaining that the surrounding circumstances could be used to infer Palacio's intent, which, as explained above on the sufficiency analysis, does not misstate the law. If the State could not so much as mention the lewd acts when discussing the specific intent element, then a conviction could never be sustained by circumstantial evidence.

For these reasons, we affirm Palacio's conviction for indecent liberties with a child.

Affirmed.