NOT DESIGNATED FOR PUBLICATION

No. 125,611

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TIMOTHY G. MARTINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; GUNNAR A. SUNDBY, judge. Submitted without oral argument. Opinion filed August 2, 2024. Affirmed.

*Darby VanHoutan*, of Kansas Appellate Defender Office, for appellant.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: Timothy G. Martins appeals from his convictions and sentence after a jury found him guilty of one count of indecent liberties with a child and three counts of aggravated indecent liberties with a child. Before sentencing, Martins filed a motion and argued that a variety of factors warranted a departure from the statutorily established hard 25 years to life sentence to a prison term of only 122 months. His request was denied. On appeal, Martins contends his convictions must be reversed because the State committed prosecutorial error during closing arguments and there is not sufficient evidence to support one of his convictions for aggravated indecent liberties. He further argues he is

1

entitled to be resentenced given that the district court abused its discretion when it declined to impose the departure sentence he requested. Following a careful review of the record, the claims of error alleged, and the law governing those respective issues, we are not persuaded that error occurred during Martins' trial. Accordingly, his convictions and sentence are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

The abuse in this case spanned a period of several years during which time Martins perpetrated multiple unlawful sex acts against Jane Doe and Mary Roe. The issues Martins brings before us for consideration largely do not pertain to the convictions arising out of the abuse Jane Doe suffered. As a result, we will not include details associated with those offenses in our factual recitation of the case.

In January 2021, during Mary's senior year of high school, a significant argument erupted between her and Martins which prompted Mary to move out of the house. Immediately afterwards, she called a family member to inform them of her decision and report that Martins inappropriately touched her and Jane during their childhood. Upon receiving this news, the relative shared the information with a law enforcement officer who, in turn, relayed the report to the Lawrence Police Department Special Victims Unit ("SVU"), and an investigation followed. As a result of that investigation, the State charged Martins with one count of indecent liberties with a child for sexual acts he perpetrated against Jane, and four counts of aggravated indecent liberties with a child for those he committed against Mary.

Martins' case proceeded to a jury trial during which Jane, Mary, and Martins each testified about their account of the alleged incidents. Mary explained that cuddling with her parents was a common occurrence but cuddling with her mother was distinctly different than how she cuddled with Martins. For instance, she cuddled with her mother

2

on the couch by laying her head on her mother's lap or shoulder and was always fully clothed in those moments. By contrast, she was "usually half-clothed" during encounters with Martins, and while he would cuddle with Mary on the couch, he also frequently invited her into his bed or invited himself into hers for cuddling. Mary's mother was usually in the room when Mary cuddled with Martins in her parents' bedroom, but only Mary and Martins were present when they cuddled in her basement bedroom. Martins encouraged Mary to be naked when they cuddled because he "liked the skin-to-skin contact and he felt closer to [her] whenever [they] were naked."

Mary detailed those instances when Martins inappropriately touched her during a cuddle session. She could not recall the precise time frame for the first incident but narrowed it to when she was around 10 to 12 years old, after her breasts started to develop. Mary was clothed in pants but no shirt as she lay on top of Martins. At one point she felt him get an erection, so she quickly jumped off him. Martins took that opportunity to lean over and fondle Mary's breasts. Mary testified that while it felt "weird and uncomfortable," given their family dynamic she did not immediately process the touching as wrong.

The next incident occurred during the fall of 2017 when Mary was 13 years old and exited the shower to find Martins lying in her bed. Mary attempted to get dressed, but Martins insisted that she come cuddle with him. Mary relented and put on her underwear and then got into bed next to Martins. Martins simply laid next to Mary for a short while but then manually and orally fondled her breasts. Eventually he got up to leave and told her, "You look like you enjoyed that a little bit too much." Martins then slid his hand underneath Mary's underwear, digitally penetrated her vagina, and encouraged her to "keep [herself] shaved." Mary testified that she never told Martins to stop because she did not realize at that time that his conduct was an inappropriate act between father and daughter.

3

Mary indicated that a similar incident occurred about a year later when Martins touched her in an illicit manner in an effort to "'take the gay away'" because Martins had learned that Mary was in a relationship with another girl. Mary tried, on multiple occasions, to share her concerns about her father's actions with her mother, but her mother was dismissive and told Mary that she bore the responsibility to keep herself safe. Mary eventually confided in Jane about the incidents despite her parents' earlier warnings not to involve Jane and learned that Jane endured similar incidents with Martins.

Finally, Martins took the stand to address the accusations. He testified that he began cuddling with the girls in their bed when they were around 5 or 6 years old. He acknowledged that the girls would occasionally be naked when they cuddled as teenagers, but he always wore underwear and sometimes a shirt and shorts.

Next, Martins addressed Mary's accusations specifically, beginning with the incident that happened in the fall of 2017. According to Martins, Mary asked him to come into her bedroom. When he walked in, Mary was on the bed wearing only her underwear and purportedly asked Martins to kiss her breasts. Martins admitted that he did so intentionally and with a sexual motive but then felt ashamed, so he left the room. Later that night, Martins apologized to Mary about the incident. Martins claimed he eventually told his wife about the incident sometime later but could only bring himself to say it was an accident. Martins unequivocally acknowledged the dishonesty in that statement.

Martins stated that Mary confronted him about the incident in January 2018, and angrily accused him of being a pedophile. He chose to sit silently. Later that evening, his wife asked Martins "if kissing [Mary's] breast was appropriate." He agreed that it was not. Martin later testified that he engaged in no other instances of sexual conduct with Mary.

4

Following Martins' testimony, the case was turned over to the jury for deliberation and it ultimately returned guilty verdicts for each of the five charges. Martins moved to set aside the verdict for Count 5 on the grounds it was identical to Count 4. With no opposition from the State, the court set aside the guilty verdict for Count 5 and dismissed the charge.

Before sentencing, Martins filed a departure motion and requested a determinate grid sentence of 122 months' imprisonment instead of the 25 years to life sentence the Legislature established for a portion of his crimes of conviction. He outlined several factors that he believed provided the requisite substantial and compelling justification to grant his motion, including: (1) his lack of any criminal history; (2) his age reflects a low likelihood for recidivism; (3) he complied with offender registration; (4) he was on bond for over a year without any violations; (5) the victims are now adults and there is no need for Martins to have future contact with them; (6) he was a productive member of society with multiple jobs for the State of Kansas and Douglas County; (7) he and his wife provided foster care to over 60 children; (8) he suffers from Primary-Progressive Multiple Sclerosis and a caregiver may become necessary as his condition deteriorates; (9) he has a strong support network; and (10) he is willing to engage in cognitive-based programs for individuals with sexual behavior problems.

The district court declined to find that Martins' case presented substantial and compelling reasons which warranted departure to a more lenient sentence and explained how it arrived at that conclusion. Specifically, the court was not persuaded that Martins' medical condition demanded leniency as he could receive care through the Department of Corrections. The judge acknowledged Martins' work history and its receipt of many letters of support for Martins but explained that is not novel and many sex offenders have support systems and function within the community despite their sexual misconduct. Next, the court opined that Martins' compliance with registration requirements and his success on bond do not mitigate his actions, nor did his years as a foster parent given that

5

he perpetrated sex acts upon his daughters. Finally, the district court observed that while the acts may have been less severe than those typically associated with this type of offense, one of the most important factors is the impact sexual abuse has on victims, and Martins' actions had a significant impact, potentially lifelong, on his daughters.

Martins was sentenced to serve a prison term of 32 months for Count 1, lifetime imprisonment without the possibility of parole for 25 years for Count 2, 59 months in prison for Count 3, and 41 months in prison for Count 4. The district court ordered that all counts run concurrently for a controlling hard 25 years to life sentence.

Martins timely brings his case before us for consideration of the claims of error he alleges occurred at trial which affect the validity of his convictions and sentence.

LEGAL ANALYSIS

*The prosecutor neither impermissibly commented on Martins' credibility nor shifted the burden of proof during closing arguments.*

In his first claim of error, Martins contends that he is entitled to reversal of his convictions because the State made improper remarks concerning his veracity and attempted to shift its responsibility to bear the burden of proof. The State counters that the challenged statements fell within the wide latitude afforded to prosecutors and, to the extent they could be classified as erroneous, any such error was harmless.

Reviewing courts employ a two-step process to evaluate claims of prosecutorial error: error and prejudice. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that

6

does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Prosecutors are graced with wide latitude in crafting arguments and drawing reasonable inferences from the evidence. Such statements must be accurate reflections of the evidence and the law and cannot be used as a tool to inflame the passions or prejudice of the jury or otherwise divert its attention away from its obligation to decide the case based on the evidence and controlling law. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021).

When determining whether a particular statement transcends the State's permissible latitude, we consider the remark within the context in which it was made rather than attempt to analyze it in isolation. *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019). In can be said that a prosecutor exceeds the boundaries of their approved zone when they express a personal belief concerning the credibility of a witness or segment of testimony presented at trial. Such comments are considered unsworn, unchecked testimony, as opposed to a legitimate commentary on the evidence of the case. *State v. Gulley*, 315 Kan. 86, 95, 505 P.3d 354 (2022). A prosecutor may, however, legitimately discuss the *circumstances* which cast a light on a witness' reliability or lack thereof. *State v. Hilyard*, 316 Kan. 326, 342, 515 P.3d 267 (2022). Finally, while Martins was not required to object during the trial to preserve this claim for appeal, on review we are permitted to consider the absence of an objection when analyzing whether error occurred. See *Bodine*, 313 Kan. at 406.

Martins' first challenge arises from the portion of the State's closing argument captured below. It is his position that the italicized terms reflect an intent on the part of the prosecutor to share his personal, negative perception of Martins' credibility with the jury.

"He was fuzzy on some details of the 2017 incident with [Mary], which constitutes Counts 3, 4 and 5. He testified that [Mary] presented herself to him. He told [his wife] about the incident with [Mary]. But bear in mind that, by Timothy Martins' own testimony, he stated to you that he *minimized* this conduct when he told [his wife] about it. He *minimized* it and he said that he accidentally kissed [Mary]'s breasts. So he told part of what happened, but not all of what happened. That was by his testimony." (Emphases added.)

Notably, the record before us reflects that Martins' trial counsel took the opportunity to address these comments during his own closing remarks and stated:

"One of the things you just heard Mr. Seiden say was that Mr. Martins minimized when he spoke to his wife. No, he didn't minimize. He flat out lied. Right? When you say you accidentally kissed someone's breast, when, in fact, he has since admitted he kissed it and it was wrong, that means what he told his wife was a lie. And that is tough to do."

The trial transcript indicates that Martins admitted to the acts alleged in the 2017 incident and acknowledged that his conduct was intentional and sexually charged. When his attorney inquired whether Martins told his wife about the incident, Martins responded that he told his wife sometime later that he accidentally kissed Mary's breasts. Martins' attorney then asked whether his characterization of his conduct as an accident constituted a lie, and Martins responded in the affirmative.

Viewing the context in which the prosecutor made the statement, we comfortably conclude that the remark was merely a restatement of Martins' own testimony. That is, the State simply pointed out that, in effect, Martins minimized the incident when he told

his wife about the act but characterized it as an accident. We decline to find that the comments at issue impermissibly disparaged Martins' credibility and thereby fell outside the wide latitude afforded to prosecutors in crafting closing arguments.

Martins' second allegation of prosecutorial error consists of a claim that the State impermissibly shifted the burden of proof during its rebuttal closing statements. Proper analysis of his contention requires us to first step back and look at the statements Martins' counsel made when addressing the jury at closing. The record bears out that Martins' attorney highlighted the fact that several individuals were not called to testify as witnesses for the State, including, Jane's friends, Mary's therapist, Mary's high school counselor, and various law enforcement officers involved in the investigation. On rebuttal the State addressed this alleged evidentiary deficiency:

> "People of the jury, Mr. Clarke has mentioned a number of witnesses and pieces of evidence that the State didn't put on:  Dr. Teasdale, Dr. Teasdale's records and notes, [Mary]'s journal, the high school counselor, other law enforcement officers that responded in 2018, DCF, KVC, [Mary]'s friends. You know who else could have called those witnesses? You know who else could have put that evidence on? Mr. Clarke. If he believed any of that was going to be helpful, he could have certainly put that on."

According to Martins, the prosecutor's remarks were intended to communicate that Martins failed to present evidence to support the validity of his testimony, which he asserts is the functional equivalent of shifting the burden of proof back to Martins to prove his own innocence. While it is improper for the State to engage in such burden shifting, that does not occur when a prosecutor highlights evidentiary weaknesses in the defendant's case. *State v. Watson*, 313 Kan. 170, 176, 484 P.3d 877 (2021). Hand in hand with that principle is the prosecutor's ability to respond in kind when a defendant argues that the State's evidence is lacking because it neglected to introduce some piece of evidence. That is, the prosecutor acts well within the grace they are given when they

9

respond by "'informing the jury that the defense has the power to introduce evidence . . . and subpoena witnesses.'" *State v. Hachmeister*, 311 Kan. 504, 516, 464 P.3d 947 (2020).

The Kansas Supreme Court addressed a similar issue in *State v. Williams*, 299 Kan. 911, 329 P.3d 400 (2014). In that case, defense counsel argued in closing that the State failed to produce any witnesses identified by the victim who could corroborate her testimony. The prosecutor countered on rebuttal that Williams possessed subpoena power that was identical to that of the State. On review, the court found the prosecutor's remark was permissible because the State is allowed to refute claims by the defense that the State's failure to call a witness to corroborate the evidence undermines the credibility of its case. By arguing that a witness' absence weakens the State's position, the inference is that the witness would have been beneficial to the defense. Therefore, it is within prosecutorial parameters to address this purported inference by advising the jury that the defense also had the ability to call the witness if it would have been helpful to their case. *Williams*, 299 Kan. at 937-41; see also *State v. Naputi*, 293 Kan. 55, 63-64, 260 P.3d 86 (2011).

Here, the State walked the same path as the prosecutor in *Williams*. In doing so, it did not suggest or intimate that Martins was required to call the identified witnesses in order to disprove the acts alleged or to prove his own innocence. Rather, it engaged in an effort to rebut remarks made by defense counsel that Kansas courts have deemed permissible. See *Williams*, 299 Kan. at 940-41; *Naputi*, 293 Kan. at 63-64.

Because we are not persuaded that either of the alleged instances of prosecutorial error fell outside the wide latitude afforded to prosecutors, we need not engage in the next step of the analysis to determine whether any prejudice occurred. Martins' claim of prosecutorial error does not entitle him to relief.

*When the evidence is viewed in the light most favorable to the State, it is sufficient to sustain Martins' conviction of aggravated indecent liberties.*

Next, Martins argues the State failed to prove beyond a reasonable doubt that he was guilty of aggravated indecent liberties with a child as charged under Count 2, because it failed to establish that he engaged in any lewd fondling or touching and, to the extent he did so, that it was undertaken with any measure of specific sexual intent. The State counters that the testimony elicited from Mary and Martins was sufficient to enable the jury to conclude beyond a reasonable doubt that he engaged in lewd fondling or touching with the requisite intent.

We analyze challenges made to the sufficiency of the evidence by reviewing the evidence in a light most favorable to the State and determining "'whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt'" without reweighing the credibility of the evidence. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). "This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021). A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Pattillo*, 311 Kan. 995, 1003, 469 P.3d 1250 (2020).

Under Count 2, the State alleged that Martins committed aggravated indecent liberties with a child by fondling Mary's breasts when she was between 10 and 12 years of age. In order to sustain a conviction for that offense, the State carried the burden to prove the following elements beyond a reasonable doubt:

"(3) engaging in any of the following acts with a child who is under 14 years of age:

(A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." K.S.A. 21-5506(b)(3)(A).

Martins claims the State failed to present sufficient evidence to demonstrate that he subjected Mary to lewd fondling or touching. It remains his contention, as it has been throughout this case, that it was merely an instance of the skin-to-skin contact that was common in their household and, as such, the touching was not motivated by any sexual desire.

Physical contact violates the statutory provision if it meets the common meaning of the term, "lewd." That is, if the touch is:

"'sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; [or] indecent, obscene, or salacious.'" In considering if a touch is lewd, a factfinder . . . should consider whether the touch 'tends to undermine the morals of a child [and] is so clearly offensive as to outrage the moral senses of a reasonable person.' [Citations omitted.]" *State v. Reed*, 300 Kan. 494, 500-01, 332 P.3d 172 (2014).

The details of the offense at issue, as recounted through Mary's testimony, reflect an incident in which Mary was lying on top of Martins, wearing only her pants, until she felt him get an erection, which prompted her to get up. Once she was upright, Martins

12

took the opportunity to fondle Mary's bare breasts then pinch and roll her nipples between his fingers.

In addition to the account provided by Mary, the jury had the benefit of Martins' seemingly inconsistent perceptions of nudity in the home and physical expressions of affection. For example, Martins testified that his wife was raised in a home with a more liberal lifestyle where nudity was a common, accepted practice. Thus, "she was comfortable with that type of lifestyle. [He] was not." Martins also testified that he and his wife would share kisses on the lips as they sat on the couch which he described as "new to [him]." Both of those segments of his testimony are at odds with his other assertions that naked skin-to-skin contact with his teenaged daughter was merely familial affection.

We recognize that Martins denies this incident ever occurred, but our standard of review directs that we are to review the evidence in the light most favorable to the State and not subject it to reweighing or any reassessments. When we do so, we are convinced it is sufficient to allow a reasonable fact-finder to conclude that the touching undermined Mary's morals and would outrage the moral senses of a reasonable person. Martins' conduct far exceeded harmless touching or an acceptable expression of familial affection between a parent and their child.

Our conclusion is informed by a somewhat analogous case. In *Reed*, the defendant was accused of entering the victim's bedroom and, while she was fully clothed, rubbed his groin against her buttocks and lower back. He also isolated a second victim during a family barbecue, so he could manually touch and rub his groin against her buttocks. The victims' testimony was the only evidence the State put forth to prosecute the charges, and the jury returned a guilty verdict. On appeal, the Kansas Supreme Court found that a rational fact-finder could conclude that a touching of the sort alleged would undermine

the morals of the underage victims and outrage the moral senses of a reasonable person. *Reed*, 300 Kan. at 501-02.

The conduct Martins engaged in shares similarities with the sexual acts analyzed in *Reed*. We are satisfied that Martins' touches can be clearly characterized as indecent, obscene, salacious, unchaste, or licentious. Accordingly, we reject his claim that the State failed to present sufficient evidence to prove that the acts he perpetrated against Mary constituted lewd fondling or touching.

The second prong of Martins' deficient evidence claim focuses on the intent element of the offense. He contends that the State failed to present sufficient evidence to prove that when he touched Mary, he did so with the intent to satisfy the sexual desires of himself, Mary, or both as required by K.S.A. 21-5506(b)(3)(A). He takes the position that because cuddling and skin-to-skin contact were common occurrences between him and Mary, the incident at issue was not sexual in nature, and thus, there was no intent to elicit arousal.

Actual arousal or satisfaction of the child or offender's sexual desires is unnecessary. *State v. Brown*, 295 Kan. 181, 201, 284 P.3d 977 (2012). Rather, the intent to elicit such desire may properly be shown by circumstantial evidence. *State v. Clark*, 298 Kan. 843, 850, 317 P.3d 776 (2014). Circumstances which demonstrate a sexual intent may include but are not limited to: (1) a pattern or history of touching over time; (2) the places on the body touched; (3) the nature of the touching; (4) the defendant's consciousness of guilt; (5) a desire for secrecy; and (6) the isolation of the victim. See *Reed*, 300 Kan. at 503 (evaluating evidence of these factors); *Clark*, 298 Kan. at 850 (list of nonexclusive factors).

Mary's testimony that Martins developed an erection immediately before the touching is clear evidence of Martins' actual arousal, and a jury could reasonably

14

conclude that the subsequent fondling was drawn from Martins' intent to satisfy his present sexual desires. Next, we believe that the fact this incident occurred while Martins was alone with Mary in her bedroom is another significant factor in the intent equation. Finally, we find the precise, erotic nature of the fondling compelling, particularly where a jury is specifically instructed it is permitted to use its common knowledge and experience when deliberating over the charges. It is conduct of the sort that falls well outside the scope of that which is familial and harmless. Viewing this evidence in the light most favorable to the State, we are convinced it is sufficient to support a finding of sexual intent.

Mary's testimony, as well as Martins' personal statements, provided sufficient evidence from which a reasonable fact-finder could conclude, beyond a reasonable doubt, that Martins subjected her to lewd fondling that was motivated by a sexual intent. Accordingly, his conviction for aggravated indecent liberties with a child as charged in Count 2 is affirmed.

*The district court did not abuse its discretion when it denied Martins' request for a durational departure to a grid sentence for his Jessica's Law offense.*

In his final point of error, Martins argues that given the various substantial and compelling reasons he presented to the district court in support of his departure request, no reasonable person would have denied his motion. The State responds that the denial was reasonable and appropriate considering the harm that Martins caused his victims.

The legislatively established penalty under Jessica's Law, as set forth in K.S.A. 21-6627, generally provides for a sentence of 25 years to life for first time offenders of the select sexual offenses included within its scope. The statute, however, expressly authorizes and provides a procedure for imposing a departure sentence from the mandatory minimum sentence of 25 years. See K.S.A. 21-6627(d). If it is the offender's

15

first Jessica's Law conviction, the district court may depart from the mandatory minimum term and impose a sentence under the Kansas Sentencing Guidelines Act (KSGA) if, "following a review of mitigating circumstances," the court finds substantial and compelling reasons to do so. K.S.A. 21-6627(d)(1); *State v. Powell*, 308 Kan. 895, 902, 425 P.3d 309 (2018).

When presented with a departure motion in cases of this nature, the district court must first review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then it makes a determination, based upon all the facts of the case, whether the mitigating circumstances rise to the level of "'substantial and compelling reasons'" to depart from the mandatory minimum sentence. *Powell*, 308 Kan. at 913-14 (citing *State v. Jolly*, 301 Kan. 313, 324, 342 P.3d 935 [2015]). The district court does not need to affirmatively articulate that it refrained from weighing mitigating and aggravating circumstances. *Powell*, 308 Kan. at 908.

On appeal, we review a district court's denial of a departure under Jessica's Law for an abuse of discretion. *Powell*, 308 Kan. at 902. An abuse of discretion occurs when the decision under review turns on an error of law, is not supported by substantial competent evidence, or amounts to one with which no reasonable person would agree. Martins, as the party alleging an abuse of discretion, bears the burden to demonstrate that such abuse occurred. See *State v. Galloway*, 316 Kan. 471, 476-77, 518 P.3d 399 (2022).

To grant a departure request, the district court must find at least one factor that is "substantial and compelling." *State v. Montgomery*, 314 Kan. 33, 37, 494 P.3d 147 (2021). However, "even though mitigating circumstances must be present for a finding of substantial and compelling reasons, mitigating circumstances do not necessarily equal substantial and compelling reasons." *Jolly*, 301 Kan. at 323. The Kansas Supreme Court has held the term substantial to mean "'something that is real, not imagined, and of substance, not ephemeral,'" and a compelling reason to be "'one that forces a court—by

16

the case's facts—to abandon the status quo and venture beyond the presumptive sentence.'" *State v. Grable*, 314 Kan. 337, 345, 498 P.3d 737 (2021) (quoting *State v. Morley*, 312 Kan. 702, Syl. ¶¶ 3-4, 479 P.3d 928 [2021]).

Although Martins asserted several statutory and nonstatutory mitigating factors in support of his motion before the district court, only the following factors were carried over into his appeal:  (1) lack of criminal history, (2) employment history, (3) poor health, (4) strong support system, and (5) success on bond as a registered offender. Those not presented to us for consideration are abandoned and will not be considered in our analysis of the issue. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (Issues not adequately briefed are deemed waived or abandoned and should not be considered by the reviewing court.). We will address each preserved factor in turn.

Martins' lack of criminal history is one of the statutorily recognized mitigating circumstances that can support a departure sentence in a Jessica's Law case. K.S.A. 21-6627(d)(2)(A). This fact is supported by the presentence investigation report, which reflects that Martins has no prior convictions and therefore has the lowest criminal history score of 'I.' But the existence of this factor alone does not automatically justify or mandate a departure. See *Jolly*, 301 Kan. at 323; *State v. Cipra*, No. 125,211, 2023 WL 5992501, at *3 (Kan. App. 2023) (unpublished opinion).

The remainder of Martins' assertions are nonstatutory mitigating factors. When reviewing whether a sentencing court erred in denying a departure based on a nonstatutory factor, the appellate court must determine whether the nonstatutory factor's existence is supported by the record. *Morley*, 312 Kan. at 711.

Turning to Martins' consistent employment history, we note it included positions with law enforcement and government agencies. The district court reasoned this was not substantial or compelling because many offenders can function within society despite

their sexual misconduct. Moving to the matter of Martins' health, the district court determined that the factor did not clear the substantial or compelling threshold because it did not excuse his actions. Next, the district court recognized the numerous letters it received as a show of support for Martins. However, it was not persuaded and instead observed that many sex offenders have strong support systems despite their actions. Finally, Martins asked the court to consider his performance or behavior while on bond in this case. The court acknowledged the accuracy of the statement, but nevertheless declined to find that it rose to the level of a substantial and compelling reason to depart from the statutorily mandated sentence.

The district court specifically addressed each of the mitigating factors Martins put forth. Its opinion of their compelling character simply differed from that of Martins as it found that none of them were substantial or compelling considering that the facts of the case aligned with the legislative intent motivating life sentences for these offenses. The district court recognized the merit and need for a departure from off-grid sentences in certain instances. But in the context of child sex crimes, it found the most important factor leading to the establishment of the sentence is the impact the sexual misconduct has on the victim, and Mary specifically testified at sentencing about the trauma Martins' actions would cause her throughout her life. Thus, from the district court's perspective, the harm caused by Martins' actions demonstrated why the legislatively provided for sentence was particularly appropriate here and why the proffered mitigating factors were insufficient to prove otherwise.

On appeal, Martins simply recites the same mitigating factors and seemingly offers their mere existence as a reason to find the district court's decision was unreasonable. He does not explain how or offer any argument to support why those same factors are substantial or compelling beyond mere conclusory statements. Nor does he affirmatively seek to establish why the district court's conclusion was erroneous when compared with those factors. Accordingly, Martins has failed to meet his burden to prove

18

the district court's decision was unreasonable. The district court's conclusion that no substantial and compelling reason existed to depart from the status quo and that the Jessica's Law sentence was appropriate is upheld.

Affirmed.